Donald M. SULLIVAN, Appellant,

v.

COMMITTEE ON ADMISSIONS AND GRIEVANCES OF the UNITED STATES DISTRICT COURT FOR the DISTRICT OF COLUMBIA, Appellee.

No. 19732.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 14, 1966.

Decided March 3, 1967.

Supplemental Opinion On Rehearing March 13, 1968.

———◇———

Mr. Joseph A. Fanelli, Washington, D. C., for appellant. Mr. Andrew A. Lipscomb, Washington, D. C., also entered an appearance for appellant.

Mr. Francis W. Hill, Washington, D. C., with whom Messrs. Edmund L. Jones and Roger Robb, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, Senior Circuit Judge, BURGER and LEVENTHAL, Circuit Judges.

BURGER, Circuit Judge:

This is an appeal from part of a judgment of the District Court dismissing charges of misconduct filed by the District Court's Committee on Admissions and Grievances against Appellant Sullivan, a member of the District Court Bar.

The background of this case is revealed in this court's three opinions in Gage v. Riggs National Bank,[1] and in the matter of the Estate of Margaret Delano Gage, Administration No. 105422. The problem is rather well known to members of the Bar.

The appeal arises in part out of the activities of the American Archives Association and its pattern of relations with some members of the legal profession; the fact pattern in this case is fairly representative of similar occurrences in this jurisdiction.

American Archives Association is what is commonly called a "missing heir finder" notwithstanding its pretentious name. As such it located the 14 heirs of Margaret Delano Gage before any of

---

[1]. Respectively, 115 U.S.App.D.C. 396, 320 F.2d 715 (1963) 119 U.S.App.D.C. 69,

337 F.2d 105 (1964); 119 U.S.App. D.C. 355, 342 F.2d 934 (1965).

them had counsel, and secured assignments from the 12 paternal heirs, providing that each would pay Archives forty per cent (40%) of any amounts said heirs might receive from the proceeds of the estate. As is Archives' usual practice the name of the estate was not disclosed until Archives had exhausted its efforts to induce all of the heirs to give assignments to it.

The remaining facts are developed in a stipulation entered into by Appellant and the Committee in the District Court.

1. [T]he Respondent [2] was *retained* by the American Archives Association to represent *its interests* under assignments which it had secured from nonresident and previously unknown heirs of Margaret Delano Gage, deceased. * * * (Emphasis added.)

2. Shortly after Respondent's employment by American Archives Association, Respondent was asked by American Archives Association if he had any objection to its acquainting its assignors with the fact that Respondent was representing the interest of American Archives Association or to its telling such assignors that if any of them should desire to avail themselves of Respondent's services in the matter, Respondent would be willing to represent them also and *without charge.* Respondent stated to American Archives Association that he had no objection to its so doing. Thereafter, the Association wrote to each of its assignors (being 12 of the 14 heirs at law and next of kin of the decedent) so advising them. * * * (Emphasis added.)

3. A form of authorization * * * was transmitted by American Archives Association to each of its assignors * * * by which such heir, if he chose to do so, could authorize the Respondent *to represent him* in the collection of his share of the estate. All twelve of the heirs from whom American Archives Association had received assignments did sign such authorizations and Respondent undertook their representation also. At the time Respondent undertook to represent the heirs, each heir knew that Respondent also represented the interest of American Archives Association. * * * (Emphasis added.)

4. At the time of his retainer by the American Archives Association, the Respondent knew that in similar cases, for many years, and right up to the time of his retainer in the Gage matter, other reputable attorneys practicing in the District of Columbia, known personally to him, had represented and been retained by both the American Archives Association and the heirs who had made assignments of portions of their interests to it.

5. Respondent undertook his representation of American Archives Association *and* the heirs in good faith.[3] After the Respondent was advised by the Grievance Subcommittee that it questioned whether Respondent's representation of American Archives Association and the paternal heirs was in conformity with the canons of ethics as to solicitation and as to conflict of interest, Respondent continued to represent the paternal heirs and the American Archives Association. Respondent advised the Grievance Subcommittee as to his reasons for so continuing, and that according to his un-

---

2. Appellant Sullivan, of course, was the "Respondent" in the District Court, and all references in the stipulation to "Respondent" are to him.

3. Appellant entered an appearance on behalf of the 12 heirs in the Gage Estate proceeding but entered no appearance as attorney for American Archives Association. In fact, the Association was not a party to the proceeding. When a petition for the appointment of an alleged creditor as administratrix was filed, Appellant filed a cross-petition on behalf of one of the heirs he represented seeking the appointment of a bank as administrator. This was the subject matter of our earlier litigation. See note 1 *supra.* It was also the crucial factor initiating the Committee investigation which has resulted in this appeal.

derstanding of the law in this jurisdiction there was no conflict of interest and no solicitation; that if a conflict should arise he would promptly suggest to his clients the need for separate representation; and because of his understanding of his duties and obligations to his clients he did not feel that he could or should withdraw.

Charges against Appellant were heard by the Committee on Admissions and Grievances. The Committee specifically found that Appellant had violated Canons 6, 16, 27, 28, and 35 of the Canons of Ethics.

In a Memorandum Opinion of May 25, 1965, a three-judge District Court found that each of the said Canons had been violated but, for reasons set forth in its opinion, concluded to dismiss the charges with an admonition to Appellant and a caveat to the bar generally.

Appellant appeals only from that part of the District Court Opinion, as incorporated in the Order of dismissal, which he views as reflecting unfavorably on his professional conduct.

■ The Appellee questions Appellant's standing to maintain the appeal since the District Court concluded for appropriate reasons not to impose sanctions in this case. However, the District Court has determined that Appellant was guilty of proscribed conduct and this determination plainly reflects adversely on his professional reputation. In a sense Appellant's posture is not unlike that of an accused who is found guilty but with penalties suspended. We conclude this gives him standing to appeal.

We need not deal separately with each finding and conclusion of the District Court to reach the heart of the matter. The essence of the case is embraced in the following portion of its opinion:

That the Bar itself has never taken formal action is regrettable since the Court has been informed by the Committee on Admissions and Grievances that the matter of the particular Association and its relationship with counsel in this jurisdiction over the years in different cases has been discussed.

It is the view of the Court, and we so hold, that such relationship partakes of the nature of champerty, amounts to the solicitation of professional employment, permits the intervention of a lay agency between attorney and client, foments litigation and intrudes upon the duty requiring counsel to use his best efforts to restrain and prevent the client from doing things which the lawyer himself ought not to do.

We are not disposed, however, to enter any formal order of censure against the respondent while others similarly situated remain untouched in the wings because the question has hitherto not been formally raised.

Nevertheless this result is not to be taken as leading either to the conclusion or to the inference that the Court subscribes to the attenuated form of reasoning which presumes to assert that what has been done in the past by others under similar arrangements with the same Association, or indeed with any other organization, corporate or otherwise, or with any lay individual, can be done with impunity because the question of its propriety has never been formally raised. Such past conduct does not clothe the fault itself in the habiliments of professional rectitude. Nor is good faith or the lack of bad faith an exculpatory circumstance.

The record abundantly supports the view of the District Court panel of judges: The case arises against a background of an inherently champertous undertaking by the Association; the solicitation thereafter by the Association of a lawyer-client relationship between the heirs and a lawyer of the Association's choice is plainly forbidden solicitation of professional work. It is equally clear that an undertaking of representation of the heir, by a lawyer already committed to represent the interests of

the "heir finder" creates not a potential but an actual and present conflict of interest. Among other things, the first obligation of a *lawyer* acting truly and wholly in the interests of the heir might well be to advise his heir-client (a) that the contingent fee contract between the "heir finder" and the heir was void; (b) that he, the lawyer, already represented and owed primary duties to the "heir finder"; (c) that in all but rare instances where a contest over heirship existed, the heirs might not need either a lawyer or the Archives Association, and that a contingent fee might be inappropriate; (d) that at most the services of a lawyer, barring a challenge to the heir's rights, would be minimal and that representation should be for a fee measured by the time necessarily devoted to collection of heir's claims. Here, however, the prime duty of Appellant arose out of a prior contract with the "heir-finder" to "represent *its* interests under assignments which it had secured from" the very same heir. This prior contract with the "heir-finder" would tend to silence any urge to give such advice to the new client.

These propositions are so clear and plain that it is difficult to see why lawyers needed to await the action of the Committee on Admissions and Grievances and the decision of the District Court. However, it appears that repetition of this pattern of conduct had dulled the perception and professional sensibilities of some members of the bar to the point the District Court felt that in fairness to this Appellant he be warned rather than disciplined. This is not an unfamiliar technique in circumstances where a court decides an issue for the first time. It was therefore entirely within the discretion of the District Court to treat the Appellant as it did rather than impose on him the full measure of disciplinary sanctions which the stipulated facts might warrant.

Affirmed.

### SUPPLEMENTAL OPINION ON REHEARING

PER CURIAM:

A major premise of our opinion, issued March 3, 1967, was that a conflict of interest is present when a lawyer representing an heir-finding association claiming rights in an estate as assignee of the heirs also represents those heirs. The question of conflict arises because the assignment, procured from the heirs as "payment" for divulging information about their possible inheritance, may well be unenforceable,[1] and a lawyer acting as counsel for the heirs may well have an affirmative duty to advise them of that possibility.

■ Appellant's petition for rehearing calls to our attention that the District Court did not make any finding with respect to conflict of interest, and did not set forth any conclusion that there had been a violation of Canon 6, although that was one of the charges in the complaint. As the supposition of conflict of interest was a significant basis for our opinion, we have reconsidered the decision of March 3, 1967, vacate the order of affirmance, and remand to the District Court for such further proceedings as may be required.[2]

So ordered.

---

1. The possibility of conflict was not obviated by Estate of Lott, Admin. No. 86, 184 (D.D.C. May 1, 1959). Appellant contends that was a ruling that such an assignment is valid and enforceable. The only issue before the court, however, was a jurisdictional objection by the administrator. The assigning heirs expressly conceded that they were not challenging the validity of the assignments.

2. Our action does not require further proceedings if not insisted on by appellant.

The District Court may well consider that since no order of suspension of appellant was envisioned, the opinions already issued suffice for the more important and general purpose of advising the Bar of the problems as to violations of Canons confronting lawyers retained by heir-finders. Whether or not further proceedings are held herein, the District Court may well consider it appropriate to adopt a rule specifically addressed to the heir-finder issue.