**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David L. RIES, Defendant–Appellant.**

**No. 95–10427.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 5, 1996.*

Decided Nov. 21, 1996.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Sandra Gillies, Woodland, CA, for defendant-appellant David Ries.

Mark J. McKeon, Assistant United States Attorney, Sacramento, CA, for plaintiff-appellee United States of America.

Before: NORRIS, KOZINSKI and TASHIMA, Circuit Judges.

KOZINSKI, Circuit Judge.

David Ries was convicted of charges arising from a scheme to pass off some $13 million in counterfeit securities. His only argument on appeal is that he was denied counsel of choice when the district judge rejected his out-of-state attorney's pro hac vice application.

Judge Garcia denied the application after a series of events convinced him that Ries' chosen counsel—Utah attorney Paul Young—would impede the progress of the case. A brief chronology confirms the judge's concerns:

Ries first appeared before a magistrate judge on February 25, 1994. At his arraignment on February 28, Assistant Federal Defender Jeffrey Staniels was appointed to represent him. Trial was set for April 25, 1994.

At a status conference on March 11, the trial date was vacated at defendant's request. After several continuances of status hearings and trial dates at the request of Ries or his co-defendant, the trial was finally set for February 6, 1995.

Young made his first appearance at a trial confirmation hearing on January 23, 1995. Ries stated that he wanted to retain Young and relieve the federal defender. Although Young had not yet filed his pro hac vice application, the court permitted him to appear specially on behalf of the defendant. However, the court ordered Young to file his pro hac vice application before he left the courthouse, and Young said he would do so. Young then orally moved for a continuance of the trial date; the court reset the trial for February 27 and the trial confirmation hearing for February 13.

On February 13, Young again appeared for the defendant. The court inquired into whether Young had filed his pro hac vice application, and Young said, "Yes. I have." Young then requested a continuance of the trial date so that he could file "some motions under 12(b) that need to be made prior to the trial." The judge stated that Young would have to petition the court to bring any dispositive motions at that late date and would also have to request that they be heard on shortened time. He denied the motion to continue, without prejudice, again observing that he was unhappy about the delays in bringing the case to trial.

On February 17, four working days before the trial was scheduled to begin, Young filed a motion to recuse the trial judge and to continue the trial yet again. He also filed a witness list naming 88 people—including Congressmen Henry Gonzalez and John Dingell and a number of other public figures—who had not been served.

In violation of Local Rule 430, none of Young's motions were noticed; therefore, it became the judge's burden to bring the parties into court. He asked his deputy clerk to schedule a hearing on the first available date. The clerk was able to schedule the hearing for February 24, the last business day before the jury was to be empaneled.

On February 22, Young filed his pro hac vice application. Under Local Rule 180(b)(2), he was required to designate a "member of the Bar of this Court with whom the Court

and opposing counsel may readily communicate regarding that attorney's conduct of the action and upon whom papers shall also be served." Young designated a James Knowles of "Salano [sic] Beach, CA" as his local counsel. The court made a call to the State Bar and found that there was no attorney with that name listed in California. The court did find an attorney Knowles with a different first name in Solana Beach, a community 500 miles from the courthouse in Sacramento. That attorney was not a member of the Eastern District of California bar, nor had Young submitted the required consent of Knowles or anyone else to appear as local counsel.

When the matter was called on Friday, February 24, 1995, defendant appeared without an attorney. Defendant told the court that "[m]y counsel couldn't be here today." Incredulous—given that the trial was scheduled to begin the following Monday—the court trailed the case so that the defendant could telephone Young and local counsel.

When the case was recalled, defendant announced that Young had sent a fax to the court clerk "[t]his morning or last night" regarding his absence, but that he mistakenly sent it to the wrong area code. The court then recited the procedural history of the case, including Young's failure to show up for the crucial eleventh-hour hearing; Young's failure to comply with the court's order that he file his pro hac vice application on January 23; Young's misrepresentation on February 13 that he had already filed the application; the filing of a pro hac vice application that failed to designate identifiable local counsel and that was "erroneous in other particulars"; and the filing by Young of a number of unnoticed motions in violation of local rules and procedures.

Only then did the court deny Young's pro hac vice application.

\*　　\*　　\*

■ "A defendant's right to the counsel of his choice includes the right to have an out-of-state lawyer admitted *pro hac vice*." *United States v. Lillie,* 989 F.2d 1054, 1056 (9th Cir.1993); *see also Panzardi–Alvarez v. United States,* 879 F.2d 975, 980 (1st Cir. 1989)("[A] decision denying a *pro hac vice*

admission necessarily implicates constitutional concerns."), *cert. denied,* 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990). However, the Sixth Amendment right to chosen counsel is not absolute, *Lillie,* 989 F.2d at 1055–56; it can be abrogated to serve a "compelling purpose." *United States v. D'Amore,* 56 F.3d 1202, 1204 (9th Cir.1995). Ensuring the ethical and orderly administration of justice is one such purpose. *See Lillie,* 989 F.2d at 1056; *Panzardi–Alvarez,* 879 F.2d at 980.

■ Here, the judge determined that admission of attorney Young would interfere with the "orderly administration" of justice— that is to say, of Ries' trial. A portion of the judge's statement denying Young's application is reprinted as an Appendix to this opinion. It is clear from the transcript that Judge Garcia's sole concern was getting the trial on track.

■ Pro hac vice counsel, "[o]nce admitted, ... cannot be disqualified under standards and procedures any ... more stringent than those imposed upon [members of the local bar]." *United States v. Collins,* 920 F.2d 619, 626 (10th Cir.1990), *cert. denied,* 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991). However, it is not true that standards for admission of pro hac vice counsel must be precisely the same as for counsel who seek permanent admission. This is so because counsel from other jurisdictions may be significantly more difficult to reach or discipline than local counsel. Where, as here, an of out-of-state attorney strongly suggests through his behavior that he will neither abide by the court's rules and practices—thus impeding the "orderly administration of justice"—nor be readily answerable to the court, the judge may, consistent with the "compelling purpose" standard of *D'Amore,* 56 F.3d at 1204, reject his pro hac vice application. *See also Panzardi–Alvarez,* 879 F.2d at 980 (in deciding whether to grant pro hac vice application, it is "appropriate ... for the court to consider the effect of the attorney's past actions ... on the administration of justice within the court.").

■ In denying a pro hac vice application, the judge must articulate his reasons, for the benefit of the defendant and the reviewing court. "[M]echanistic application of rules limiting such appearances is improper." *Collins*, 920 F.2d at 626. Here, the judge's statement of reasons was not mechanistic, but measured. We have reviewed the history of attorney Young's appearances in the Eastern District of California, and studied the district court's handling of the matter. We have determined that the judge was well within his discretion in concluding that Young was not living up to his responsibilities.

■ Finally, the judge, in denying a defendant choice of counsel, must give the defendant adequate time to prepare for trial. Here, after denying attorney Young's application, Judge Garcia continued trial for nearly three months, eliminating any prejudice to the defendant.

**AFFIRMED.**

### APPENDIX

Transcript of Proceedings

Friday, February 24, 1995

THE COURT: Criminal case number 94–0009, U.S. versus David Ries, defendant.

MR. McKEON: Good morning, your Honor. Mark McKeon for the United States.

THE COURT: Mr. McKeon.

DEFENDANT RIES: Good morning, sir, David Ries. My counsel couldn't be here today. I think he informed the court.

THE COURT: No. He didn't.

. . . .

DEFENDANT RIES: I was under the impression—

THE COURT: I am going to—Mr. McKeon, I'm going to trail this matter. I want predecessor counsel, Jeffrey Staniels, to be here. . . . I think he's tied up in another court, for how long?

THE CLERK: He said 9:45. He estimated 9:45.

THE COURT: I'll recall this case at about 10:00 a.m.

MR. McKEON: Yes, your Honor.

THE COURT: Mr. Ries, your attorney was required to be here. The jury trial is scheduled to commence next Monday, and [it's] impossible for him to file the motions that he thinks he wants to file and then not show up. In addition to that, our local rules require, as he must know, that a local counsel be named upon whom we can serve papers and readily communicate.

So I anticipated that if for some reason Mr. Young couldn't be here, his local counsel would be. Now, he apparently hasn't shown up either. I'm going to recall this case in about an hour. If I were you, I'd call Mr. Young and tell him this matter is going to proceed to status conference as scheduled at 10:00 a.m. this morning, and I suggest you also call local counsel and tell him the same thing; okay?

DEFENDANT RIES: (Nodding head.)

. . . .

THE COURT: Recalling criminal case number 94–0009, U.S. versus David Ries, defendant.

MR. McKEON: Your Honor, Mark McKeon for the United States.

THE COURT: Mr. McKeon. Mr. Staniels, would you please step forward? I want you to be present while I review my notes of the interesting procedural history of this case. The record will show that Mr. David Ries, defendant, is also present without his attorney. Is that correct, Mr. Ries?

DEFENDANT RIES: Well, he faxed something, I guess, to the Court, and it was mistakenly routed to Fresno.

THE COURT: Hold it. Hold it. Get in front of the microphone. I can't believe what I'm hearing. We do not accept fax filings. So what are you telling me?

DEFENDANT RIES: Well, as you directed, sir, you asked me to call my attorney during this continuance here.

THE COURT: Which attorney did you call?

DEFENDANT RIES: I called Mr. Young, and he advised me that they had sent a letter to your clerk, and it somehow went to the 209 area code instead of the 916 area code. He told me to inform you that they have corrected that mistake, and it's now been directed to your clerk.

THE COURT: He sent a letter to this Court, but it went to Fresno; is that what he said?

DEFENDANT RIES: It was a fax. That's what he told me.

THE COURT: When was this fax sent?

DEFENDANT RIES: This morning, I believe. This morning or last night, I don't know which.

THE COURT: And what's it supposed to tell me?

DEFENDANT RIES: It's just advising you about his conflict.

THE COURT: He can't do that by fax. Okay. I've heard you out, and I heard what you said.

MR. STANIELS: Your Honor, if I may, Mr. Ries told me that Mr. Young was actually in court today. He didn't say that to you.

THE COURT: It doesn't make any difference at all, Mr. Staniels. There is a reason why I wanted you to be here.

In any event, the record will show that Mr. David Ries, defendant, is present without his attorney, Mr. Paul Young, and without someone who purports to be his local counsel, James Knowles, from Solana Beach, California.

DEFENDANT RIES: As I understand it, he was also in court today, sir.

THE COURT: Who was?

DEFENDANT RIES: Mr. Knowles.

THE COURT: He was in court this morning, here?

DEFENDANT RIES: Not here.

THE COURT: I am not concerned about that. You can't schedule a trial for tomorrow and not show up the day of a status conference. . . .

DEFENDANT RIES: Nobody knew about the status conference, sir, until Tuesday.

THE COURT: That's right. And that's because of the motions that were filed, but in any event let me read my notes into the record.

I had this matter placed on calendar this morning. It's scheduled to go to jury trial next Monday, February 27th. I had the status conference scheduled this morning when attorney Young, who had been privately retained to represent defendant Ries, filed a series of motions, including a motion to recuse me from the case, and what appears to be a motion to continue the trial ... scheduled to commence next Monday.

The motions were filed February 16, four working days before the jury trial was scheduled to commence, and today was the date agreed upon to consider the motions, not to decide them, but just to consider them, and to decide whether the jury panel should be called off, or at least delayed. Today, Friday, of course, is the last day to call off jurors summoned for next Monday's jury trial. They are summoned to appear at 8:00 a.m.

To recite briefly the history of this case, this indictment was filed in this court on February 18, 1994, over a year ago, and Assistant Federal Defender Jeffrey Staniels was appointed to represent the defendant before me and a CJA panel attorney, Thomas Bell, was appointed to represent co-defendant Mamoru Yamaichi. At the defendants' arraignment the jury trial of the matter was scheduled to start April 25, 1994.

However, at the request of the defendants that trial date was vacated, appropriate excludable time was found, as matters were considered by the Court from time to time on law and motion and scheduled status conferences, all in open court on the record. The jury trial was then again scheduled to commence October 11, 1994. However, the trial date was again vacated at the request of the defendants because they needed additional time to prepare for trial.

The trial was then rescheduled to commence February 6, 1995. However, at the

trial confirmation hearing of January 23, 1995 defendant Ries announced that he had retained private counsel, Mr. Paul Young, and asked that his appointed attorney, Mr. Staniels, be relieved. Mr. Young, who said he was from Salt Lake City, appeared that morning. I allowed a special appearance, as Mr. Young is not a member of this District's Bar, and at that time I advised him to file his pro hac vice application before he left the building that morning.

On his assurance that he would, Mr. Staniels was relieved of further representation in the case, and I allowed Mr. Young's special appearance. Mr. Young then orally moved for a continuance of the trial then scheduled to commence February 6, and when co-counsel and the Government prosecutor did not object, I granted the oral motion. We, I mean all of us, Mr. Young, Mr. Bell, Mr. McKeon and myself, picked a new trial date [of] February 27, 1995, 10:00 a.m.

That's next Monday, which attorney Young expressly agreed to, saying that he had reviewed the file of the case and that he also wanted to move the case along. We then set a trial confirmation hearing [for] February 13th at 9:00 a.m. At the trial confirmation hearing of February 13th Mr. Young announced that he would move to continue the jury trial because there were motions he wished to file.

I told Mr. Young it was too late to hear motions, but instructed him to file his motions in writing with a request to shorten time to hear them, and that absent any noticed motions, the trial would proceed as scheduled on February 27, next Monday. On February 17, which was really only four working days before that trial date, Mr. Young filed several motions, including a "motion for extension of time," which I take to be a motion to continue the trial date.

However, in violation of our local rules he failed to notice the motions for hearing. This caused my deputy courtroom clerk to have to make a series of phone calls to the parties to schedule immediately, or as soon as possible, a status conference to consider how to proceed with the trial scheduled to commence next Monday. I instructed my deputy courtroom clerk to get the status conference on calender by this morning, the last working day before the trial was scheduled to commence.

So here we are. Attorney Young did not file his pro hac vice application until February 22, the day before yesterday, in violation of my direct order that he file it before he left the building last January 23 when he made his special appearance at the trial confirmation hearing of that date. That is, he filed his pro hac vice application almost a month late and without explanation as to why he waited so long.

The pro hac vice application was not only filed almost a month late, but listed an attorney from near San Diego as local counsel, and also erroneously gave his ... name as James Knowles. A routine call to the California State Bar listed no attorney by that name in California. We have since learned he gave us the wrong first name. There is an attorney Knowles in California in Solana Beach.

More important, however, this attorney, James Knowles, is not a member of the Eastern District of California Bar so that he does not qualify as local counsel on a pro hac vice application. But even if he were, he doesn't fit the definition of a local attorney under our local rules with whom this Court and opposing counsel can readily communicate and upon whom papers can be served. He's almost 500 miles away.

As I've indicated, these several motions that attorney Paul Young filed have never been noticed for hearing in violation of our local rules. So they are not on calender this morning. Mr. Young was directed to appear by my deputy courtroom clerk this morning for this status conference.

As a matter of fact, I gave instructions to my deputy courtroom clerk to call all of the parties and get this matter on for status conference as soon as possible before the trial date. I was available all this week except Monday, which was a court holiday, and apparently the earliest that it could be scheduled was this morning.... Mr. Young has [not] shown up to tell us what he intends

to do about the trial next Monday, nor tell us who his local counsel might be, nor even if he intends to go to trial.

In any event, Mr. Young has proven to be someone who should not be practicing in this Eastern District Bar as pro hac vice counsel. I mention that the pro hac vice counsel application was not filed until February 22, the day before yesterday, in violation of my direct order that he file it when he was in the building at the trial confirmation hearing last month. The pro hac vice application, which is erroneous in other particulars, is now denied.

. . . .

Mr. Ries, you now appear before me without an attorney. You have several options. You might convince me that this matter can proceed to trial next Monday as scheduled because no one has moved to continue it under our local rules in pro per, that is without an attorney. As I recall, either you or your co-defendant Yamaichi, from time to time have indicated that you might want to go pro per. So you might convince me of that. That's one option.

Another option is you might request this Court to vacate and postpone that trial date once again, in the face of admonitions for over a year that you have been present for and have heard, that I want to get this case moving. So that's your second option. You may ask me to postpone the trial date of next Monday, and I might consider it.

The third option is that if you tell me you're now unable to employ counsel of your own selection, I might consider appointing counsel to represent you at taxpayers' expense. If I did that I would probably reappoint Mr. Staniels who at least is familiar with the case.

And that's the sole reason, Mr. Staniels, I wanted you to be present today. I'll hear from the defendant on what option Mr. Ries now chooses.

. . . .

DEFENDANT RIES: Well, sir, to me this seems quite a bit prejudicial to put me on the spot like this and determine whether I'm going to go pro per.

THE COURT: I'm not putting you on the spot, Mr. Ries. Your attorneys that you say you hired, Mr. Young and Mr. Knowles, have put you on the spot. But . . . I'll tell you what I'll do. I'm going to take a short recess.

. . . .

THE COURT: Recalling case number 94–0009, U.S. versus David Ries. The record will show that all the proper parties are again before the Court, that is the prosecutor, Mr. McKeon, the defendant, David Ries, and Assistant Federal Defender, Mr. Jeffrey Staniels. . . . What did you decide to do, Mr. Ries?

DEFENDANT RIES: Well, sir, I decided I'm having a Maalox moment, but other than that I would like to ask for a short continuance, possibly until Monday or Tuesday of next week. I was unaware that there were any problems with the pro hac vice [application] or the substitution of counsel.

THE COURT: Well, incidentally when the court reporter read me back her notes of [the February 13] hearing, Mr. Young said he had already filed his pro hac vice application, and he had not. . . . The pro hac vice application wasn't filed until the day before yesterday, February 22.

In any event, the pro hac vice application to appear is denied for all of the reasons that I just stated, including the fact that the so-called local counsel designated is not a member of the Eastern District Bar, which our local rules require. Besides that, for the reasons I've indicated, Mr. Young has shown himself to be someone who would not be eligible to practice in this Eastern District. He cannot follow our rules, and he apparently would not follow my directives.

Appellant's Excerpt of Record at 13–27 (with minor alterations).