**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

PATRICIA ANN ENSIGN, aka Patricia
Moats aka Patricia Poseley,
            *Defendant-Appellant.*

No. 06-10447

D.C. No.
CR-03-00344-MHM

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

PATRICIA ANN ENSIGN, aka Patricia
Moats aka Patricia Poseley,
            *Defendant,*

OSCAR A. STILLEY,

            *Appellant.*

No. 06-10457

D.C. No.
CR-03-00344-6-
MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
April 16, 2007—San Francisco, California

Filed July 5, 2007

Before: Alfred T. Goodwin, Dorothy W. Nelson, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

8027

## COUNSEL

Oscar Stilley of Fort Smith, Arizona, and Anders Rosenquist, Rosenquist & Associates of Phoenix, Arizona, for defendant-appellant Patricia Ann Ensign.

Oscar Stilley of Fort Smith, Arizona, for appellant Oscar Stilley.

Mark S. Determine, Assistant United States Attorney, and Eileen J. O'Connor, Assistant Attorney General, and Alan Hechtkopf, Washington, D.C., for plaintiff-appellee.

## OPINION

CALLAHAN, Circuit Judge:

Patricia Ann Ensign appeals from her conviction on four counts of willful failure to file tax returns, and Oscar Stilley seeks review of the district court's refusal to allow him to proceed *pro hac vice* as Ensign's attorney. We determine that the district court acted within its discretion in declining to allow Stilley to represent Ensign *pro hac vice* and that Stilley lacks standing to appeal the district court's orders.

### I.

Ensign, along with eight other individuals, was charged in a 27-count indictment with one count of conspiring to defraud the government for the purposes of impeding and impairing the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 371, and a number of counts of willful failure to file tax returns. Ensign and four co-defendants were eventually tried before a jury. Ensign was acquitted on the conspiracy charge, but convicted on four counts of willful failure to file tax returns. Following her conviction, Ensign filed a timely notice of appeal claiming *inter alia* that her Sixth Amendment right to counsel of her choice was violated by the district court's orders declining to allow Stilley to represent her.[1] In addition, Stilley filed a notice of appeal on his own behalf.

Stilley first became involved in this case in the fall of 2004, when Ensign, through her appointed counsel, Alex Gonzalez, sought to have Stilley appointed as co-counsel or advisory counsel. Stilley was admitted to the practice of law in Arkansas, but was not admitted to the district court's bar or the Arizona bar. On November 19, 2004, the district court appointed Stilley as legal advisor/consultant for the co-defendants with

---

[1]Ensign's remaining claims are addressed in a memorandum disposition filed concurrently with this opinion.

compensation under the Criminal Justice Act ("CJA") at $150 per hour for up to 75 hours.

On January 25, 2005, Ensign moved to associate Stilley as a CJA attorney, *pro hac vice*. The motion was accompanied by Stilley's affidavit stating that he was admitted to the practice of law in Arkansas, was not presently suspended or disbarred, but had "one disciplinary proceeding that has yet to be resolved and has been pending since 2002 (no hearing has been set on such proceeding as of yet)." That same day, the district court appointed Stilley as lead counsel for Ensign with a compensation rate of $90 per hour under the CJA.

On February 16, 2005, the government submitted under seal evidence concerning disciplinary actions against Stilley in Arkansas. At a pre-trial hearing on March 18, 2005, after excusing all defendants and counsel except Stilley and Ensign, the district judge asked Stilley whether he had been subjected to disciplinary proceedings in Arkansas and directed him to respond in writing.

On April 19, 2005, after having considered Stilley's written response, the district court entered an order under seal terminating Stilley's representation of Ensign as lead counsel, legal advisor, and/or consultant under the CJA. The court explained that usually the Federal Public Defender's Office screened attorneys for the CJA Defense Panel and required disclosure of all pending disciplinary proceedings, but because Stilley was appointed through "means other than the typical application process," the Court was obligated to conduct its own review of Stilley.

The court proceeded to exercise its discretion by withdrawing Stilley's conditional appointment. The court noted that it had been unaware of the disciplinary matters concerning Stilley pending in Arkansas, and concluded that Stilley presented "issues which would preclude his appointment or qualification to the district's CJA panel in the ordinary course of panel

selection." The court set forth several reasons for its decision. First, it noted that during the lengthy trial in this case, Stilley might be required to serve a 30-day sentence imposed by the Arkansas Circuit Court. Second, the court observed that Stilley had not been forthcoming regarding the various matters pending in Arkansas. Third, the court commented that the present proceedings in Arkansas concerning Stilley did not appear to be isolated or infrequent as Stilley seemed to have been "subject to sanctions and discipline proceedings in Arkansas on several occasions." Finally, the court observed that "instead of responding to the Court's specific questions, Mr. Stilley submitted a brief devoting more than twenty pages to collaterally attacking the various proceedings in Arkansas" and concluded that the fact that Stilley "was either unable or unwilling to focus on the key issue, further lends credence to this Court's concerns regarding his representation."

The April 15, 2005 order also addressed its impact on Ensign. The order indicated that it did not prejudice Ensign because during the two-month period that Stilley acted as Ensign's lead counsel, Ensign had been concurrently represented by Mr. Gonzalez, who had been her attorney of record since March 2004. In addition, the order concluded that Ensign's Sixth Amendment right to counsel of her choice was not implicated because Ensign "all along has had capable and competent counsel, and it is well settled indigent defendants do not have the right to have a particular counsel appointed. *United States v. Mack*, 362 F.3d 597, 599 (9th Cir. 2004)."

On April 22, 2005, the district court denied Ensign's motion for reconsideration, and on May 3, 2005, it denied Ensign's objection to the removal of Stilley as a defense consultant. Ensign's and Stilley's requests for interlocutory relief from this court were unsuccessful. On May 20, 2005, we indicated that the order revoking Stilley's *pro hac vice* status was not appealable, and on June 6, 2005, we denied Ensign's and Stilley's petition for a writ of mandamus.

Jury selection for the trial of Ensign and her co-defendants commenced on May 19, 2005. On June 7, 2005, Ensign informed the court that she had retained Stilley as her attorney and requested that he be allowed to appear as her counsel, *pro hac vice*. The district court declined to interrupt proceedings to consider the request, but later that day the court considered the request during a break in the trial.

After limited argument on the request, the district court declined to allow Stilley to appear *pro hac vice*. The court opined that regardless of whether Stilley sought appointment under the CJA or *pro hac vice*, it still had an obligation to ensure that he was qualified to proceed and that Stilley had not satisfied the court's previously expressed concerns regarding his ethical fitness. The court further noted that (1) there were disciplinary proceedings pending against Stilley in Arkansas, (2) some of the pleadings that he had filed during the time that he was admitted *pro hac vice* were of dubious merit and possibly submitted for improper purposes such as delay, and (3) the timing of the request was significant. Expanding on this last point, the court noted that Stilley had been relieved of his responsibilities in April, trial had started two weeks earlier, and it would be disruptive to bring Stilley into the case at that time. The court concluded that the request that Stilley appear *pro hac vice* sought a privilege not a right, and denied the request as a matter within its discretion.

The court offered further explanation of its order in response to questions from Ensign. When Ensign objected that Stilley had done an excellent job and had never been disrespectful of the court, the district judge agreed that he had always been very respectful. When Ensign asked if Stilley could work for her in any capacity, the district court responded that the motion was only "to associate Oscar Stilley *pro hac vice* as lead counsel," and that Ensign's counsel could pursue Stilley as a consultant even though the district judge thought that might be problematic.

## II.

Our general rule is that the denial of a motion to appear *pro hac vice* is reviewed for abuse of discretion, except to the extent that the appeal raises an issue of law, which is reviewed de novo. *United States v. Walters*, 309 F.3d 589, 591-92 (9th Cir. 2002). *See United States v. Ries*, 100 F.3d 1469, 1472 (9th Cir. 1996) ("We have determined that the judge was well within his discretion in concluding that [the attorney] was not living up to his responsibilities."). Ensign, like the defendants in *Walters* and *Ries*, has filed an appeal from her conviction and sentence which challenges the district court's refusal to allow her attorney to appear *pro hac vice*.

## III.

**[1]** To the extent that Ensign challenges the April 19, 2005 order revoking Stilley's CJA appointment as violating her right to counsel under the Sixth Amendment, the challenge is not persuasive. The district court's assertion that Ensign did not have a right under the Sixth Amendment to have Stilley appointed CJA counsel *pro hac vice* was recently reaffirmed by the Supreme Court in *United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2565 (2006). The Court held that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id*. The district court's April 19, 2005 order only revoked Stilley's *pro hac vice* status as CJA appointed counsel. Ensign's and Stilley's actions following the April order, including their failure to seek Stilley's admission as retained counsel until after trial had commenced, reflect their understanding that the April order only denied Stilley leave to participate as CJA appointed counsel. Accordingly, the April order did not implicate Ensign's right to counsel of choice, and because Ensign has failed to argue that the revocation was an abuse of the district court's discretion, she has not demonstrated that she is entitled to any relief from the order.

## IV.

**[2]** The district court's June 25, 2005 denial of Ensign's motion to appoint Stilley as her trial counsel, however, does implicate constitutional concerns. We have held that a "defendant's right to the counsel of his choice includes the right to have an out of-state lawyer admitted *pro hac vice*." *Walters*, 309 F.3d at 592 (internal quotations marks and citations omitted); *see also Ries*, 100 F.3d at 1471.

**[3]** However, in both *Walters* and *Ries*, we recognized that the Sixth Amendment right to chosen counsel is not absolute and could be revoked to serve a "compelling purpose," such as "the efficient and orderly administration of justice." *Walters*, 309 F.3d at 592; *Ries*, 100 F.3d at 1471. In *Ries*, we stated:

> Where, as here, an out-of-state attorney strongly suggests through his behavior that he will neither abide by the court's rules and practices — thus impeding the "orderly administration of justice" — nor be readily answerable to the court, the judge may, consistent with the "compelling purpose" standard of [*United States* v.] *D'Amore*, 56 F.3d [1202] at 1204, [(9th Cir. 1995)] reject his *pro hac vice* application.

*Reis*, 100 F.3d at 1471. Similarly, in *Walters*, we explained that a defendant's exercise of his right to counsel of choice could not unduly hinder the fair, efficient and orderly administration of justice, but noted that:

> The mere fact that a defendant seeks to retain an out-of-state attorney does not hinder the efficacious administration of justice. His choice of counsel must be respected unless it would unreasonably delay proceedings or burden the court with counsel who was incompetent or unwilling to abide by court rules and ethical guidelines.

*Walters*, 309 F.3d at 592.[2]

Our approach is consistent with the Supreme Court's recent opinion in *Gonzalez-Lopez*, where the Court wrote:

> Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them. As the dissent too discusses, *post,* at 2567, the right to counsel of choice does not extend to defendants who require counsel to be appointed for them. See *Wheat* [*v. United States*], 486 U.S. [153], at 159, [1988] . . . *Caplin & Drysdale* [*v. United States*], 491 U.S., [617] at 624, 626 [1989] . . . . Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. *See Wheat,* 486 U.S., at 159-160, . . . We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.,* at 163-164, . . . and against the demands of its calendar, *Morris v. Slappy,* 461 U.S. 1, 11-12, . . . (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat, supra,* at 160, . . .

126 S. Ct. at 2565-66.

**[4]** Applying this case law, we conclude that the district

---

[2]In *Walters*, 309 F.3d at 592, and *Ries*, 100 F.3d at 1472, we further held that in denying a *pro hac vice* application the trial judge should set forth the reasons for the benefit of the defendant and the reviewing court. Here, the district judge clearly stated her reasons.

court's denial of Ensign's request on June 25 to have Stilley represent her *pro hac vice* was supported by the compelling purposes inherent in the fair, efficient and orderly administration of justice.[3] The district court gave three reasons for its order. First, it expressed concerns regarding Stilley's ethical fitness. Second, the court noted that some of the pleadings Stilley filed while he was Ensign's counsel appeared to be improper. Third, the court was concerned with the timeliness of the request because the trial had started two weeks earlier and opening arguments were scheduled to begin immediately.

All of the trial court's concerns were justified. Its concerns with Stilley's ethics were reasonably based not only on pending disciplinary proceedings in Arkansas, but also on Stilley's failure to state in his *pro hac vice* application that he was subject to pending disciplinary proceedings and on his failure to directly address those proceedings when so requested. This, combined with Stilley's failure to cure his contempt of the Arkansas court orders, raised concerns that he would "neither abide by the court's rules and practices," nor "be readily answerable to the court." *Ries*, 100 F.3d at 1471. Furthermore, the record reveals that following his appointment as Ensign's counsel, Stilley had filed numerous motions of dubious merit. Although a defendant is entitled to a zealous defense, the number and nature of the motions allowed for a reasonable concern that Stilley might consider obstruction to be part of the defense he would proffer for Ensign.

**[5]** Moreover, as the consolidated trial of Ensign and four other defendants had already started and was scheduled to continue for a number of weeks, the addition of Stilley at the

---

[3]Unlike the situation in *Gonzalez-Lopez* where the trial court ordered the attorney to have no contact with the attorney trying the case or the defendant, 126 S. Ct. at 2560, here the district judge imposed no such restrictions. When specifically asked by Ensign if Stilley could be an expert witness or consultant, the district judge indicated that this was a decision for her appointed counsel.

counsel table would likely have engendered considerable confusion and delays. Jurors could be distracted by the sudden inclusion of a new attorney. Also, the addition of a new attorney could interfere with the other defendants' rights to a fair trial.[4] Accordingly, the district court's denial of Ensign's motion was a reasonable exercise of its wide latitude in balancing the right to counsel against the demands of the court's calendar in an effort to maintain the fair, efficient and orderly administration of justice. *See Gonzales-Lopez*, 126 S. Ct. at 2565-66. The district court's order denying Ensign's motion to appoint Stilley *pro hac vice* is affirmed.

## V.

Stilley also seeks appellate review on his own behalf of the district court's refusal to allow him to appear *pro hac vice* as Ensign's counsel. He asserts that he "was denied payment on substantial amounts of time worth tens of thousands of dollars" and that his professional reputation was damaged.

**[6]** Initially, we note that regardless of Ensign's right to counsel under the Sixth Amendment, Stilley has not asserted that he had a right to be admitted *pro hac vice*, and we know of no authority to that effect. We have held that "the decision to grant *pro hac vice* status is discretionary." *Gallo v. United States Dist. Court*, 349 F.3d 1169, 1185 (9th Cir. 2003); *see also Ries*, 100 F.3d at 1472 ("We have determined that the

---

[4]It is unclear whether the district court could have satisfied all of the competing rights implicated by Ensign's motion. If Stilley's approach to Ensign's defense would have been different from the defense proffered by Gonzalez, the other defendants, if convicted, could have argued that the interjection of Stilley as defense counsel after trial started denied them their rights to a fair trial. On the other hand, if Stilley's approach would have been consistent with the defense offered by Gonzalez, there was less reason for Ensign to change horses midstream, although she was entitled to attempt to do so, regardless of its wisdom. In any event, addressing all the concerns raised by the belated motion to add counsel would have substantially interfered with, and delayed, the ongoing trial.

judge was well within his discretion in concluding that [the attorney] was not living up to his responsibilities."). Although we noted in both *Gallo* and *Ries* that this discretion is not unlimited, this does not convert the denial of a privilege into an injury sufficient to give the attorney standing to appeal.

Our cases that have considered when an attorney has a sufficient injury-in-fact to invoke appellate jurisdiction in his or her own right lead us to conclude that Stilley lacks standing.[5] In *United States v. Chesnoff*, 62 F.3d 1144 (9th Cir. 1995), an attorney and his law firm sought to appeal an order disqualify-

---

[5]Our opinion is limited to determining whether an attorney has standing to appeal an order on his or her own behalf. The parties have not briefed, and we do not address, the question of whether a particular order is appealable. Our precedents suggest that this is not always clear. In *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1196 (9th Cir. 1999), the attorney sought review of an order restricting his right to file objections to proposed class action settlements in all future cases and we held that we had jurisdiction to consider his appeal of the post-judgment order under 28 U.S.C. § 1291. In *United States v. Talao*, 222 F.3d 1133, 1135, 1141 (9th Cir. 2000), we vacated the sanction against an attorney when our jurisdiction was invoked by the attorney filing a petition for a writ of mandamus. In *Cole v. United States Dist. Court*, 366 F.3d 813, 816 (9th Cir. 2004), we denied a petition for a writ of mandamus taken by a party from an interlocutory order disqualifying counsel in a civil case, noting that such an order was reviewable by mandamus, but suggesting that it might not be reviewed on appeal, even from a final order. Also, in *Gallo*, 349 F.3d at 1176, we commented in a civil case that "the denial of a petition for admission to a district court bar is neither a final order appealable under 28 U.S.C. § 1981 . . . nor an interlocutory order appealable under 28 U.S.C. § 1292." However, in *In re North*, 383 F.3d 871, 874-75 (9th Cir. 2004), we held in an appeal by the attorney that the district court's order "was a final decision on attorney suspension reviewable under our prior cases concerning attorney suspension and disbarment." Here, Stilley asserts that we have jurisdiction pursuant to 28 U.S.C. § 1291 over an appeal from a final judgment. We hold only that we have jurisdiction to review Stilley's assertion that he was substantially injured by the district court's orders; either on appeal pursuant to 28 U.S.C. § 1291, or pursuant to 28 U.S.C. § 1651(a), if we treat the appeal as a petition for writ of mandamus. As we determine that Stilley has not sustained a cognizable injury, we dismiss his appeal.

ing them from continuing to represent their client. *Id.* at 1145. We held that they lacked standing to appeal and dismissed the appeal. *Id.* In doing so, we first outlined the constitutional dimensions of the issue noting that the "litigant must have 'suffered some injury-in-fact, adequate to satisfy Article III's case-or-controversy requirement.' " *Id.* (quoting *Caplin & Drysdale v. United States*, 491 U.S. 617, 623 n. 3 (1989)). We then quoted the Supreme Court's statement in *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982), that at a minimum Article III requires that the appellant "show that he personally has suffered some actual or threatened injury as a result of the putative illegal conduct." *Chesnoff*, 62 F.3d at 1146. We further noted, again citing *Caplin & Drysdale*, 491 U.S. at 623 n. 3, that even if the Article III requirement is met, "we must then determine whether prudential considerations favor permitting the litigant to proceed with a claim on a third party's behalf." 62 F.3d at 1145. We concluded in *Chesnoff* that appellants lacked standing because they "nowhere identified any injury *to them* caused by the district court's disqualification order." *Id.* at 1146 (emphasis in original).

In *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194 (9th Cir. 1999), and *United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000), we further considered what type of order concerning an attorney would allow the attorney to appeal. In *Weissman,* we indicated that although a sanction against an attorney could be appealable, "words alone will constitute a sanction only 'if they are expressly identified as a reprimand.' "[6]

---

[6]Addressing the district court order there in issue, the panel wrote:

> [T]he court did not identify the allegedly derogatory comments in the Order as a reprimand. Rather, the comments served to explain why the court concluded that it was necessary to place restrictions on Schonbrun's right to file objections to future proposed ADA class action settlements. Because the words themselves do not constitute sanctions, we conclude that they are not independently reviewable.

*Weisman*, 179 F.3d at 1200.

*Weissman*, 179 F.3d at 1200 (quoting *Williams v. United States*, 156 F.3d 86, 93 (1st Cir. 1998)). In *Talao*, an attorney appealed a district court order finding that she had violated a rule of ethical conduct and stating that it would refer her conduct to the state bar. 222 F.3d at 1136. We held that this order was *per se* a sanction, and hence appealable, because "the district court made a finding and reached a legal conclusion that Harris knowingly and wilfully violated a specific rule of ethical conduct." *Id.* at 1138. We reconciled our holding with *Weissman* and *Williams* by noting that "a formal finding of a violation eliminates the need for difficult line drawing in much the same way as a court's explicit pronouncement that its words are intended as a sanction." *Id.* Although other circuits have adopted slightly different standards for determining when an attorney may in his or her own right appeal an order, *Talao* remains the law in this circuit.[7]

---

[7]In *United States v. Gonzales*, 344 F.3d 1036, 1040 (10th Cir. 2003), the Tenth Circuit noted that it had held that counsel have standing to appeal orders that "directly aggrieve them," but declined to decide whether an attorney was directly aggrieved by "an order simply finding misconduct on his or her part." The court noted that the circuits were divided over whether a written decision finding attorney misconduct, but not imposing any type of sanction, could be appealed. It observed:

> On one end of the spectrum is the Seventh Circuit, which has held that an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential effects of the finding on the attorney's professional reputation. *See Clark Equip. Co. v. Lift Parts Mfg. Co.,* 972 F.2d 817, 820 (7th Cir. 1992). On the other end of the spectrum is the Fifth Circuit, which has held that a written order finding an attorney engaged in professional misconduct, but not imposing monetary liability or other sanctions, constitutes an appealable injury. *See Walker v. City of Mesquite,* 129 F.3d 831, 832-33 (5th Cir.1997) (stating "the importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for . . . appeal"). Other circuits lie somewhere between. *See Weissman v. Quail Lodge, Inc.,* 179 F.3d 1194, 1199 (9th Cir.1999) (concluding that a formal finding of a violation of a specific rule of ethical conduct is akin to an explicit pro-

**[7]** Here, the district court's orders concerning Stilley did not create a sufficient injury-in-fact to provide Stilley with standing to appeal. In *Chesnoff*, the disqualified attorney was retained counsel and had an expectation of earning a fee. Stilley, however, first sought appointment under the CJA, and subsequently, when he sought to represent Ensign at trial, he admitted that Ensign was not at that time able to pay him. It follows that neither of the district court's orders in issue resulted in a monetary loss to Stilley.[8]

**[8]** Furthermore, the district court's orders did not otherwise injure Stilley in a manner that would confer standing to appeal. The order denying Ensign's motion at trial for the appointment of Stilley *pro hac vice* was based largely on the district court's concerns with the timing of the motion, and those concerns do not necessarily reflect on Stilley's performance or competence. It is true that the district court expressed reservations about Stilley's ethics, but it made no finding of ethical violation and imposed no sanction. To the contrary, the judge specifically commented that Stilley was always respectful of the court.

---

nouncement of a reprimand and is thus appealable); *In re Williams,* 156 F.3d 86, 92 (1st Cir.1998) (concluding that only judicial comments expressly identified as reprimands or sanctions are appealable); *Sullivan v. Comm. on Admissions & Grievances,* 395 F.2d 954, 956 (D.C. Cir. 1967) (holding a district court's written finding that attorney violated several judicial canons, but declining to impose sanctions, was appealable).

*Id.* at 1039-40.

[8]Stilley has not explained the basis for his assertion that he "was denied payment on substantial amounts of time worth tens of thousands of dollars." There is nothing in the record to indicate that Stilley rendered services during the time that he was appointed under the CJA for which he was not paid. In any event, such a claim would have to be made in the trial court in the first instance. More to the point, we do not see how Stilley could expect to be compensated for any actions he took either in seeking leave to proceed *pro hac vice*, or after his requests for leave to proceed *pro hac vice* had been denied.

In both *Talao* and *Weissman* we held that to be appealable the order must clearly and intentionally sanction the attorney. We held that words alone constitute a sanction only if "expressly identified as a reprimand." *Weissman*, 179 F.3d at 1200. We also commented that a formal finding of a violation of a specific rule of ethical conduct avoids the need for difficult line drawing. *Talao*, 222 F.3d at 1138. We conclude that because the district court's denial of Ensign's motion to have Stilley represent her *pro hac vice* at trial was neither a sanction nor a formal finding of a violation of a specific rule of ethical conduct, it did not injure Stilley sufficiently to give him standing to appeal on his own right.

**[10]** The district court's revocation of Stilley's CJA appointment also did not create an injury-in-fact adequate to satisfy Article III's case-or-controversy requirement. Again, the court did not make any formal finding of a violation of any rule of ethical conduct and did not issue any sanction. Rather, it held that Stilley had failed to demonstrate that he qualified for the privilege of appointment *pro hac vice* under the Criminal Justice Act. Moreover, the district court was considerate of possible harm to Stilley's reputation as it cleared the courtroom before holding the hearing concerning Stilley's application, and it issued its order revoking his appointment under seal. Certainly, Stilley may have felt rebuked by the district court's decision, but an attorney's standing to seek appellate review of a district court order does not turn on the attorney's sensitivity to criticism. Rather, we read *Weissman* and *Talao* as requiring that the order at issue to, at a minimum, clearly and intentionally sanction an attorney before that attorney has suffered sufficient injury to have standing to appeal in his or her own right.

Prudential considerations support retaining the line we have consistently drawn between district court orders that clearly and intentionally sanction attorneys and those that are only directly or indirectly critical of counsel. *See Chesnoff*, 62 F.3d at 1145 (holding that even if the attorneys satisfied Article

III's requirement for standing, prudential considerations could still lead us to reject their assertion of standing). First, where, as here, the party the attorney represented (or sought to represent) files an appeal in her own right, there is no need for counsel to file an appeal on behalf of the client. Second, there is no objective means of evaluating the extent to which an order, in addition to granting or denying a particular motion, also rebukes an attorney. Allowing an attorney to appeal an order whenever he or she thought an appeal was necessary to vindicate his or her honor could be a source of mischief and appears unnecessary for the protection of either the parties' or counsel's rights. Furthermore, if standing to appeal depended on the umbrage taken by counsel, it would be almost impossible for a judge to know whether his or her order would give rise to an appeal. Accordingly, prudential considerations reinforce our conclusion, which is based on our opinions in *Weissman* and *Talao*, that for an attorney to have suffered a sufficient injury to provide standing to appeal in his or her own right, the order in issue must, at a minimum, clearly and intentionally sanction the attorney.

## VI.

For the foregoing reasons we conclude that the district court's orders declining to allow Stilley to represent Ensign *pro hac vice* did not violate Ensign's right to counsel under the Sixth Amendment, and because the orders did not clearly and intentionally sanction Stilley, he lacks standing to appeal in his own right. Accordingly, Ensign's conviction is **AFFIRMED** and Stilley's appeal is **DISMISSED**.