OPINION
BYBEE, Circuit Judge:
Attorney Larry Klayman applied to be admitted pro hac vice in the high-profile criminal trial of Cliven Bundy. The district court denied his application without prejudice. Bundy has now asked this court for a *1034 writ of mandamus to force the district court to admit Klayman. We decline to do so. Under our decisions, the district court had more than ample cause to turn down Klayman’s application: he is involved in an ethics proceeding before the District. of Columbia Bar, and he was not candid with the court about the status of those proceedings; he disclosed that he was twice barred in perpetuity from appearing pro hac vice before judges in the Central District of California and the Southern. District of New York, but he failed to list numerous cases—all available on Westlaw or LEXIS—in which he-has been reprimanded, denied pro hac vice status, or otherwise sanctioned for violating various local rules; and he has a record of going after judges personally, and shortly after Chief Judge Gloria Navarro denied his application, Bundy filed a frivolous" Bivens action against her in her own court. This litany of reasons for denying Klayman pro hgc vice status demonstrates that the district court did not abuse its discretion, much less commit clear en-or.
L " FACTUAL BACKGROUND AND" PROCEEDINGS ■
A. Factual Background
According to the indictment, in early April 2014, Petitioner Bundy and his code-fendants were involved in an armed standoff around Bunkerville, Nevada, with agents of the Bureau of Land Management (“BLM”). Following a more than twenty-year legal battle over grazing fees on public lands, the federal courts authorized the BLM to remove some 400 head of Bundy’s cattle from public lands. See, e.g., United States v. Bundy, 2013 WL 3463610 (D. Nev. July 9, 2013). In response to the BLM’s attempts to settle the dispute peacefully, Bundy said that he was “ready to do battle” arid “do whatever it takes” to keep the cattle. Over the course of a week, hundreds of Bundy’s supporters congregated near Bunkerville to prevent the BLM from removing Bundy’s cattle. Many of Bundy’s supporters were armed, and the BLM agents ultimately withdrew from the area. The incident .attracted national, and even international, attention.[1]
On March 2, 2016, a federal grand jury in the District of Nevada retxxrned a sixteen-count'"superseding indictment against Bundy, four of his sons, and fourteen others. The indictment charged them with Conspiracy to Commit an Offense Against the United States, 18 U.S.C; § 371; Conspiracy to Impede or Injure a Federal Officer, 18 U.S.C. § 372; Use and Carry of a Firearm in Relation to a Crime of Violence, 18 U.S.C. § 924(c); Assault on a Federal Officer, 18 U.S.C. § 111(a)(1), (b); Threatening a Federal Law Enforcement Officer, 18 U.S.C. .§ 115(a)(1)(B); Obstruction of the Due Administration of Justice, 18 U.S.C. § 1503; Interference with Interstate Commerce by Extortion, 18 U.S.C. § 1951; and Interstate Travel in Aid of Extortion, 18 U.S.C. § 1952.
B. Proceedings Before the District Court
1. Klayman’s Petition for Pro Hac Vice Admission
Following his indictment, Bundy secured local counsel, Joel Hansen.[2] He also secured the services of Larry Klayman, a member of the District of Columbia and *1035 Florida Bars. Under Local Rules for the United States District Court of Nevada, an attorney who has been retained to appear in a particular case but is not a member of the bar of the district court “may appear only with the court’s permission ... by verified petition on the form furnished by the clerk.” Nev. Dist. Ct. Local R. IA 11-2(a). The Rule further states that “[t]he court may grant or deny a petition to practice under this rule.” Id. 11—2(h); see also id. ll-2(i) (“When all the provisions of this rule are satisfied, the court may enter an order approving the verified petition for permission to practice in the particular case”).
On March 22, 2016, Klayman filed a Verified Petition stating that he had been retained by Bundy in connection with the Nevada indictment and requesting pro hac vice admission to practice before the district court. Of relevance to this petition for a writ of mandamus is the fifth question on the district court’s form, which reads:
That there are or have been no disciplinary proceedings instituted against petitioner, nor any suspension of any license, certificate or privilege to appear before any judicial, regulatory or administrative body, or any resignation or termination in order to avoid disciplinary or disbarment proceedings, except as described in detail below.
Klayman wrote in response: “The only disciplinary case pending is in the District of Columbia” and that he has “responded to a few complaints.” He elaborated in an attached statement.
With respect to the disciplinary case in the District of Columbia, Klayman stated that he had represented clients, pro bono, against his former employer, Judicial Watch.[3] He represented that “[t]he matter is likely to be resolved in my favor and there has been no disciplinary action.”
As to other complaints, he explained that he “agreed to a public reprimand before The Florida Bar” for failing to timely pay a mediated settlement to a client, but that there was “no showing of dishonesty” and he was never suspended from the practice of law. Separately, Klay-man revealed that, roughly twenty years ago, “two judges vindictively stated that I could not practice before them after I challenged rulings they had made on the basis of bias and prejudice.” He explained that those exclusions applied only to the two judges themselves, Judge William D. Keller of the U.S. District Court for the Central District of California and Judge Denny Chin of the U.S. District Court for the Southern District of New York. Moreover, he advised that the “bars of the District of Columbia and Florida reviewed these rulings and found that I did not act unethically” and that he was currently in good standing in both jurisdictions.
2. The District Court’s March 31 Order
The district court denied the Verified Petition “for failure to fully disclose disciplinary actions and related documents.” The district court found that Klayman’s statement that the matter regarding Judicial Watch from the District of Columbia “is likely to be resolved in my favor and there has been no disciplinary action” was “misleading and incomplete.” Referring to the evidence it had found on its own initiative, the district court pointed out that the District of Columbia Court of Appeals Board on Professional Responsibility had *1036 received an Affidavit of Negotiated Discipline from Klayman and a Petition- for Negotiated Discipline, signed by Klayman and counsel for the D.C. Bar, in which Klayman consented to public censure. Neither of these documents had been disclosed by Klayman. Because these documents were “admissions, of three separate incidents of stipulated misconduct that were not clearly disclosed in Klayman’s Verified Petition,” the district court denied the petition, but without prejudice. The district court then explained:
Should Klayman wish to file a new Verified Petition with the Court, the following information should be included: (1) the case numbers for the cases before Judge'William D. Keller and Judge Denny Chin that resulted in these judges precluding Klayman’s practice before them; (2) verification of the review by the Bar Associations of the Dis-tri'ct of Columbia and Florida finding that Klayman did not act unethically before Judges Keller and Chin; (3) an updated Certificate of Good Standing from the Supreme Court of Florida; (4) the Florida Bar Association’s reprimand verifying that there was no showing of dishonesty in connection with their disciplinary action; (5) the Exhibits attached to this Order; and- (6) verification that the matter-in the District of Columbia disciplinary case referenced in the Verified Petition has been resolved with no disciplinary action.
3. Klayman’s Supplemental Petition
Klayman filed a “Supplement to and Renewed Petition” on April 7, 2016.[4] Klayman provided evidence and. explanations for items (l)-(5) of the district court’s requirements as follows: (1) he provided the case names and citations for the actions regarding Judges William D. Keller and Denny Chin; (2) he provided a letter from the D.C. Bar finding no ethical violation in the Keller and Chin matters, but said that the Florida Bar’s files were no longer accessible; (3) he provided an updated letter of good standing from the Supreme Court of Florida; (4) he provided a copy of Florida’s reprimand; and (5) he provided the exhibits attached to the March order.
As to the district court’s sixth requirement, Klayman disputed the conclusion the district court drew from the documents it had identified. The court, he said, “appears to have misunderstood the nature and current posture of the disciplinary proceeding underway” in the District of Columbia.
[T]he prior attempted negotiated discipline never entered into effect.... Bar Counsel and Mr. Klayman had attempted to resolve the matter by agreement, but Mr. Klayman later thought the better of having signed the affidavit and agreeing to negotiated discipline it [sic] since he feels strongly that he acted ethically at all times.
He also supplied a copy of a letter opinion prepared by Professor Ronald Rotunda of Chapman University School of Law. Rotunda, who is well known in academic circles for his expertise in legal ethics and constitutional law, stated that it “is [his] expert opinion that in the [D.C. matter] Mr. Klayman has not committed any offense that merits discipline.” Klayman attached what he characterized as “a post-hearing brief’ that he had filed with the D.C. Bar. Klayman, however, did not explain what the “hearing” was to which he had appended his “post-hearing brief,” and the brief itself did not explain the procedural posture of the proceedings before the D.C. Bar. Klayman repeated that he *1037 was “confident of ultimately prevailing.... since the ultimate finding of the Committee which heard the evidence is simply a recommendation.” Again, Klayman did not identify what the “Committee” was, what the “evidence” was, or to what the “ultimate finding” or “recommendation” referred.
4. The District Court’s April 19 Order
The district court treated Klayman’s renewed filing as a request for reconsideration and denied it on April 19, 2016. The district court said nothing about five of the six conditions it imposed in the March 31 Order. It only discussed the matter before the D.C. Bar. The court noted that Klay-man “admits that [the D.C. matter] is still pending,” and thus there was “no error with its prior ruling.” The court ordered that “Klayman’s Verified Petition shall remain denied without prejudice until such time as Klayman can provide proof that the ethical disciplinary proceeding in the District of Columbia has been resolved in his favor.”
C. Mandamus Proceedings
On July 6, 2016, Bundy filed an emergency petition with this court for a writ of mandamus requesting that the district court be ordered to admit Klayman pro hac vice. Bundy argued that his Sixth Amendment right to counsel would be violated if he were forced to go to trial without his attorney of choice. He claimed that the district court “mechanistically” required that Klayman could not be admitted until the outcome of the D.C. Bar proceeding was known. Bundy represented that Klayman had “correctly informed the judge that the proceeding was underway and would not be finished for another few years and that Mr. Klayman had not been found liable of any ethics violations by the District of Columbia Bar.” He further represented that the “slow pace of the District of Columbia Bar should not create any assumption that that case is in any way serious, complex, or difficult.” He repeated that Klayman has “continuously been a member in good standing of the District of Columbia Bar for over 36 years and has never been disciplined” and that even if the D.C. Bar complaint were decided against him, “that would still not justify denial of Klayman’s application to appear pro hac vice.”
We ordered expedited review of the petition and directed the United States, - as the real party in interest, to file an answer; we invited the district court to address the petition “if it so desires.” We received separate responses from the United States and the district court.
The United States “respectfully decline[d] to opine on the ultimate question whether Klayman should be allowed to represent [Bundy].” The government nevertheless defended the. district court’s judgment as “within its discretion.” It cat-alogued other cases in which Klayman was reprimanded by various courts for speaking after the judge requested silence, making misrepresentations to the court, ignoring court-imposed procedures and deadlines, pursuing meritless claims, making accusations related to a judge’s race, and refusing to comply with local rules.
The district court not only defended the grounds on which it had issued its prior orders, it offered new evidence and grounds for refusing to grant Klayman pro hac vice status. First, the district court reiterated that the still-pending disciplinary proceedings in the District of Columbia raised ethical concerns. The court then challenged the veracity of how Klayman described the current status of the proceedings. Rather than “withdraw[ing] his affidavit because he felt strongly that he had acted ethically,” as Klayman claimed, the district court unearthed evidence that
*1038 the District of Columbia Hearing Committee reviewed Klaymaris Petition for Negotiated Discipline and rejected it. The Hearing Committee rejected Klay-man’s affidavit because it determined-that the “agreed-upon sanction of public censure is unduly lenient.” As such, Klayman failed to disclose the actual current disposition of his pending.District of Columbia disciplinary case, and instead provided false information to this Court by stating that he withdrew his affidavit when, in fact, the Hearing Committee rejected it.
Second, the district court also felt that Klayman had filed an incomplete and inaccurate Verified Petition because he had failed to mention “numerous other courts’ findings that he is unfit to practice,” and the court cited eight cases in which courts had commented on his “inappropriaté and unethical behavior.” Third, the district court pointed to a Second Circuit decision in which that court dismissed his challenge to the district court’s impartiality because it was “insulting and smacked of intimidation.” MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 138 F.3d 33, 38 (2d Cir. 1998). The district court then observed that Bundy recently filed a “similar[ ]” civil suit against the district judge individually, President Obama, and Senator Harry Reid, alleging a conspiracy. See Bundy v. Obama, No. 2:16-cv-1047-JCM-GWF (D. Nev. dismissed with prejudice Oct. 12, 2016). The district court thus argued that it did not abuse its discretion because Klayman’s record shows a “total disregard for the judicial process” and his admission pro hac vice would thus “impede the orderly administration of justice.”
Klayman did not respond to the district court’s new evidence that he had misrepresented the proceedings in the District of Columbia, nor did he address the cases cited by the district court or the United States in which he had been reprimanded by the courts for his conduct during the litigation. Instead, he claimed that this evidence was “not on the record before the District Court” and was “simply an ex post facto, non-meritorious attempt to justify the denial now that this Court has granted expedited review of the mandamus petition.” Klayman then repeated' his claim that the affidavit had been withdrawn and that “he has a strong case for ultimately prevailing on the merits.”
We held oral argument on an expedited basis and heard from Klayman and the United States.
II. STANDARDS FOR ISSUING A WRIT OF MANDAMUS
Mandamus “is a ‘drastic and extraordinary’ remedy ‘reserved for really extraordinary causes.’ ” Cheney v. U.S. Dist. Court, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (quoting Ex parte Fahey, 332 U.S. 258, 259-60, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947)). “As the writ is one of ‘the most potent weapons in the judicial arsenal,’ three conditions must be satisfied before it may issue.” Id. (citation omitted). “First, ‘the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires....’” Id. (first alteration in original) (quoting Kerr v. U.S. Dist. Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)). Second, the petitioner must show that “[his] right to issuance of the writ is ‘clear and indisputable.’ ” Id. at 381, 124 S.Ct. 2576 (alteration in original) (quoting Kerr, 426 U.S. at 403, 96 S.Ct. 2119). “Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.” Id.
To determine whether mandamus relief is appropriate, we weigh the five factors that we originally enumerated in *1039 Bauman v. U.S. District Court, 557 F.2d 650 (9th Cir. 1977):
(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner, will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court’s order is clearly erroneous as a matter of law. (4) The district court’s order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court’s order raises new and important problems, or issues of law of first impression.
Id. at 654-55 (citations omitted).[5] These factors are not exhaustive, see In re Cement Antitrust Litig., 688 F.2d 1297, 1301 (9th Cir. 1982), and “should not be mechanically applied,” Cole v. U.S. Dist. Court, 366 F.3d 813, 817 (9th Cir. 2004). However, “the absence of fáctor three-clear error as a matter of law—will always defeat á petition for mandamus.” In re United States, 791 F.3d 945, 955 (9th Cir. 2015) (quoting DeGeorge v. U.S. Dist. Court, 219 F.3d 930, 934 (9th Cir. 2000)). Because our conclusion that the district court did not commit “clear error as a matter of law” precludes issuance of the writ, we address only that Bauman factor.[6]
“The clear error standard is significantly deferential and is not met unless the reviewing court is left with a ‘definite and firm conviction that a mistake has been committed.’” In re United States, 791 F.3d at 955 (quoting Cohen v. U.S. Dist. Court, 586 F.3d 703, 708 (9th Cir. 2009)). Because, on direct appeal, we “normally review a denial of a motion to appear pro hac vice for abuse of discretion,” United States v. Walters, 309 F.3d 589, 591 (9th Cir. 2002), our review in mandamus proceedings is “especially deferential,” In re United States, 791 F.3d at 955. On petition for a writ of mandamus, we look to see if the district court abused its discretion in a manner so obvious that the error is “clear” to all.
III. ANALYSIS
A. The Standards for Granting Pro Hac Vice Status
A criminal “defendant’s [Sixth Amendment] right to the counsel of his choice includes the right to have an out-of-state lawyer admitted pro hac vice.” United States v. Walters, 309 F.3d 589, 591 (9th Cir. 2002) (citation omitted). But because counsel from other jurisdictions “may be significantly more difficult to reach or discipline than local counsel,” United States v. Ries, 100 F.3d 1469, 1471 (9th Cir. 1996), this right is “circumscribed in several important respects.” Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Importantly, “[t]here is no right of federal origin that permits [out-of-state] lawyers to appear in state *1040 courts without meeting that State’s bar admission requirements.” Leis v. Flynt, 439 U.S. 438, 443, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (per curiam).
Federal courts have long had the authority to “establish criteria for admitting lawyers to argue before them.” United States v. Gonzalez-Lopez, 548 U.S. 140, 151, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). They have “an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession.” Wheat, 486 U.S. at 160, 108 S.Ct. 1692; see Ries, 100 F.3d at 1471 (courts may regulate attorneys appearing before them to “[e]nsur[e] the ethical and orderly administration of justice”); see also In re United States, 791 F.3d 945, 957 (9th Cir. 2015) (“[A] court’s decision to deny pro hac vice admission must be based on criteria reasonably related to promoting the orderly administration of justice or some other legitimate policy of the courts.” (citation omitted)). Where an out-of-state attorney suggests through his behavior that he will not “abide by the court’s rules and practices,” the district court may reject his pro hac vice application. Ries, 100 F.3d at 1471.
The Local Rules for the United States District Court for the District of Nevada provide that an attorney who has been retained to appear in a particular case but is not a member of the bar of the district court “may appear only with the court’s permission ... by verified petition on the form furnished by the clerk.” Nev. Dist. Ct. Local R. IA 11-2. Among other things, that petition must state
(4) [t]hat the attorney is not currently suspended or disbarred in any court;
(5) [wjhether the attorney is currently subject to any disciplinary proceedings by an organization with authority to discipline attorneys at law; [and]
(6) [w]hether the attorney has ever received public discipline including, but not limited to, suspension or disbarment, by any organization with authority to discipline attorneys at law.
Id. 11—2(b)(4)—(6). After receiving this information on a verified petition, “[t]he court may grant or deny a petition to practice.” Id. ll-2(h).
B. Klayman’s Pro Hac Vice Status
The district court here did not abuse its discretion—much less commit clear error—when it denied Klayman’s pro hac vice application. In its answer to Bun-dy’s petition for a writ, the district court laid out a compelling case for doubting Klayman’s ability to abide by local rules of comportment or ethics. It pointed to three separate categories of activities that made it doubt Klayman’s willingness to advance the ethical and orderly administration of justice in Bundy’s case: (1) the pending D.C. disciplinary proceedings involving three separate cases of conflict of interest, including the omissions and misrepresentations he made in the verified petition regarding those proceedings; (2) numerous other cases in which federal district courts have cited him for inappropriate and unethical behavior; and (3) his pattern of perverting the judicial process with insults and intimidation against judges personally. The district court concluded, based on these three categories, that Klayman’s record shows a “total disregard for judicial process” and his admission pro hac vice would thus “impede the orderly administration of justice.” We will address the evidence for each of these grounds.
Before we do so, we must address Bun-dy’s argument about the scope of the record. Bundy points out that a district court “must articulate some reasonable basis for [ethical] doubts before denying the attorney’s admissions for pro hac vice admission.” In re United States, 791 F.3d at 957; see also Ries, 100 F.3d at 1472 (“In denying a pro hac vice application, the judge *1041 must articulate his reason for the benefit of the defendant and the reviewing court.”)- Bundy takes this to mean that any reason not articulated by the district court in its order cannot be considered by a reviewing court. In this case, Bundy argues that we may not consider any reasons or evidence not found in the district court’s March 81 or April 19 Orders. However, we have never gone that far, and Bundy fails to point to any case in which we have excluded a district court’s justifications that were provided after the fact as, for example, in a response to a mandamus petition.
A rule barring after-acquired evidence or later-supplied rationales might well make sense in the ordinary appeal after trial, where the district court has issued its order denying pro hac vice status and is not heard from again on the matter. There, we do not want to allow the opposing party, several months or years down the line, to conjure up reasons that the district court could have given for denying pro hac vice status, but failed to actually give—or even know of. But mandamus proceedings in which the district court chooses to submit an answer detailing the district court’s concerns about the attorney’s ethical transgressions are quite different. We no longer need to speculate as to the district court’s possible motivations or lament over whether to give deference to reasons the district court might, not have found persuasive in the first instance. Instead, we know exactly why the district court would deny pro hac vice status. Moreover, allowing Bundy to force us to limit our review only to the matters Klay-man revealed in his petition would give attorneys an incentive to mislead the courts—exactly the type of conduct in which Klayman engaged in this case. Confirming our conclusion that we may consider material supplied after the denial of pro hac vice status is the fact that- if we thought we were limited to considering only the district court’s stated reasons, we would vacate and remand to permit the district court to put its additional findings on the record and amend its order.
This has been a fluid and fast-moving proceeding. We conclude that the entirety of the district court’s reasoning—both from its orders denying pro hac vice status as well as its response to the petition for a writ—should be taken into account.
1. • Disciplinary Proceedings Before the D.C. Bar
The district court denied Klayman’s request “until such time as Klayman can provide proof that the ethical disciplinary proceeding in the District of Columbia has been resolved in his favor.” Klayman concedes that he is still the subject of ongoing disciplinary proceedings by the D.C. Bar, but he strenuously argues that they will be resolved in his favor.
The contested proceedings in the District of Columbia may or may not turn out to be serious. Even if we had the full record before us, that question would not be for us to answer. It is enough for us to know that the proceedings have been going on for several years and are current. A committee held hearings in Klayman’s case in January 2016, and Klayman submitted additional briefing to the Bar in March 2016—contemporaneous with his application for pro hac vice status in this case.
We do know that the charges—conflicts of interest—are serious enough that in 2015 Klayman was willing to stipulate to “public censure.” More recently, on January 13, 2016, a D.C., Bar Hearing Committee rejected the stipulated censure as “unduly lenient” and, following hearings held that same month, a different Hearing Committee made a preliminary, nonbinding finding that Klayman had violated D.C. Rules 1.9 (conflict of interest) and 8.4(d) (conduct that seriously interferes with the administration of justice) by “clear and *1042 convincing evidence.” It is this preliminary-finding that Klayman has disputed in his March- 2016 briefing. Although he contests whether the Bar Counsel has shown by clear and convincing evidence that he has violated the rules of professional responsibility, he has argued to the D.C. Bar that even if there was a “technical violation,” the only appropriate sanction should be an “informal admonition.”
If the only reason the district court had offered was the bare fact of an open disciplinary proceeding in D.C., the district court might have , abused its discretion in denying pro hac vice status to Klayman. At a minimum, the district court would have had to make further inquiry—something beyond requiring Klayman to show that the proceedings have been finally resolved in his favor.
But the district court laid out a second, very good reason for its decision: although he had several opportunities to clear the record, Klayman was not forthcoming about the nature and status of those proceedings. In his application, Klayman— properly—disclosed that there was a “disciplinary case pending ... in the District of Columbia,” that the charge was conflict of interest, and that he expected the matter to be “resolved in his favor.” The district court denied his petition “for failure to fully disclose disciplinary actions and related documents,” and the district court supplied documents filed in the proceeding that showed that Klayman had agreed to “public censure.” Even then, the district court only denied the application without prejudice to Klayman refiling. At that point Klayman was fully on notice that he needed to be transparent about the D.C. Bar proceedings.
. Klayman was not forthcoming with the district court. In his “renewed application,” Klayman corrected the record—but only in part. He told the district court that the stipulation was of no effect because he had “thought the better of having signed the affidavit and agreeing to negotiated discipline.” Klayman may have had second thoughts about stipulating to his “public censure,” but his statement was woefully misleading. In fact,.a Hearing Committee for the D.C. Bar had rejected that stipulation on behalf of the Bar because it was “unduly lenient,” That prompted the hearings in January 2016, a Hearing Committee recommendation, and Klayman’s March 2016 brief to the D.C. Bar.
Klayman thus was on notice in the March 31 Order that his initial disclosure of the facts was “misleading and incomplete,” yet Klayman offered only a partial correction of the record. As the district court told us, he was not forthcoming about the status of the D.C. proceedings': “Klayman failed to disclose the actual correct disposition of his pending District of Columbia disciplinary case, and instead provided false information to this Court by stating that he withdrew his affidavit when, in fact, the Hearing Committee rejected it.” That finding is not clearly erroneous.
Indeed, Klayman had a full and fair opportunity to correct the record when we allowed him to respond to the district court’s filing and when we held oral argument. He offered no explanation whatsoever for his failure to disclose the current status of his' case. He never advised the district court that the Héaring Committee rejected the stipulation, that there was a recent hearing in January 2016, and that the Hearing Committee made a recommendation to the D.C. Bar. In fact, we still do not have the most recent documents filed in Klayman’s disciplinary case.[7]
*1043 These reasons more than justify the district court’s decision to deny Klayman pro hac vice admission to practice in the district court in Nevada, We have previously held on direct review that it was not an abuse of discretion to deny pro hac vice status because of “pending disciplinary proceedings,” a “failure to state in his pro hac vice application that [the attorney] was subject to pending disciplinary proceedings and ... his failure to directly address those proceedings when so requested.” United, States v. Ensign, 491 F.3d 1109, 1115 (9th Cir. 2007). When the district court follows our cases, it cannot abuse its discretion.
2. Sanetionable Conduct in Other'Proceedings
Klayman failed to mention, but the district court found quite relevant, “numerous other courts’ findings that he is unfit to practice” based on his “inappropriate and unethical behavior.” The district court supplied us with a 2007 order of the Supreme Court of New York, which denied Klay-man’s petition to proceed pro hac vice because “Klayman’s record demonstrates more than an occasional lapse of judgment, it evinces a total disregard for the judicial process.” Order Denying Pro Hac Vice Application at 4, Stern v. Burkle, 20 Misc.3d 1101A, 867 N.Y.S.2d 20 (Sup. Ct. 2008). The New York court collected examples from other courts, and the district court referred to these instances of Klay-man’s sanctioned, sanetionable, or questionable behavior:
• The Federal Circuit affirmed the district court’s revocation of Klayman’s ability to appear before the district court pro hac vice in perpetuity and its sanctioning of Klayman for accusing the trial judge of anti-Asian' bias and “unreasonably and vexatiously multiplying the proceedings.” Baldwin Hardware Corp. v. FrankSu Enter. Corp., 78 F.3d 550, 555 (Fed. Cir. 1996).
• The Second Circuit affirmed the district court’s revocation of Klayman’s ability to appear before the district court pro hac vice in perpetuity and its sanctioning of Klayman for “undignified and discourteous conduct that was degrading to the [district court] and prejudicial to the administration of justice” by, among other things, making accusations of racial and political bias and acting “abusively] and obnoxiously].” MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 994 F.Supp. 447, 455 (S.D.N.Y. 1997), aff'd, 138 F.3d 33 (2d Cir. 1998).
• Klayman was sanctioned for filing an .untimely complaint and opposing the government’s motion with “frivolous filings” that “wasted time and resources of defendants as well as of the court.” Wire Rope Importers’ Ass’n v. United States, 18 C.I.T. 478, 485 (Ct. Int’l Trade 1994).
• Klayman exhibited “often highly inappropriate behavior” and his performance “was episodically blighted by rude and, unprofessional behavior which was directed toward the presiding judge and opposing counsel.” Material Supply Int’l, Inc. v. Sunmatch Indus., Co., No. Civ. A. 94-1184, 1997 WL 243223 at *8, *10 n.7 (D.D.C. May 7, 1997), aff'd in part and reversed in part, 146 F.3d 983 (D.C. Cir. 1998).
• Klayman “apparently misread (or never read) the local rules” and the district court threatened sanctions for any future failures to comply with local rules. Alexander v. FBI, 186 F.R.D. 197, 199 *1044 (D.D.C. 1999). The district court “gr[ew] weary of [Klaymaris] use—and abuse—of the discovery process” and “ha[d] already sanctioned [Klayman] for making misrepresentations to the court, allowing the court to rely upon those representations in a favorable ruling, and then later contravening those very (mis)representations.” Alexander v. FBI, 186 F.R.D. 188, 190 (D.D.C. 1999).
• Klayman responded to the district court’s orders with a “forked tongue” and made arguments with “malicious glee.” Judicial Watch of Fla., Inc. v. U.S. Dep’t of Justice, 159 F.Supp.2d 763, 764 (D.D.C. 2001).
• Klayman made arguments regarding the conduct of the district court that were “bizarre” and “beyond the farfetched.” Dely v. Far E. Shipping Co., 238 F.Supp.2d 1231, 1241 (W.D. Wash. 2003).
Of these eight instances of revocations or denial of pro hoc vice status, sanctions for ignoring local and federal rules, and complaints of misrepresentations and omissions, Klayman mentioned only two to the district court. And in doing so, the district court noted, Klayman still failed to accept ány responsibility for his actions. Instead, he claimed that the judges were being “vindictive” in their orders forever barring him from appearing pro hoc vice in their courtrooms. He failed, however, to mention that these two “vindictive” district court judges’ orders were affirmed by their respective federal appellate 'courts, both of which commented on Klaymaris inappropriate behavior. See MacDraw, 138 F.3d at 37-38; Baldwin Hardware, 78 F.3d at 555.
The district court went on to highlight specifically a more recent case, which Klayman failed to mention, in which the district court’s summary judgment order noted how Klayman “has routinely shown a disregard for [the district court’s] Local Rules.” Klayman v. City Pages, No. 5:13-cv-143-Oc-22PRL, 2015 WL 1546173, at *8 n.7 (M.D. Fla. Apr. 3, 2015), aff'd, 650 Fed.Appx. 744 (11th Cir. 2016). The Florida district court had “become quite frustrated with [Klaymaris] various tactics to avoid Court rules throughout the course of this litigation. Unfortunately, the Court learned early on in this case that this approach to litigation is the norm and not the exception for [Klayman].” Id.
Moreover, a quick Westlaw search has found three additional cases, bringing the grand total to twelve, in which Klaymaris ability to practice law in an ethical and orderly manner was called into question:
• Klaymaris “failure] to comply with even the most basic of discovery requirements” was “not simply an unexplained hiccup in an otherwise diligently prosecuted case” and thus warranted sanctions. Klayman v. Barmack, No. 08-1005 (JBD), 2009 WL 4722803, at *1 (D.D.C. Dec. 4, 2009).
• After “the patent failure of the Court’s use of lesser sanctions in the past to have any discernible effect on Klay-mari conduct,” Klaymaris “consistent pattern of engaging in dilatory tactics, his disobedience of Court-ordered deadlines, and his disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court” necessitated further, more severe, sanctions. Klayman v. Judicial Watch, Inc., 802 F.Supp.2d 137, 138-39 (D.D.C. 2011).
• Klayman repeatedly did not “attempt to comply” with local rules, and the district court threatened sanctions for any further violations, Montgomery v. Risen, No. 15-cv-02035-AJB-JLB, 2015 WL 12672703, at *1 (S.D. Cal. Oct. 2, 2015).
Klayman has a reputation as a vigorous litigator, but this is not a flatter- *1045 mg record, and not one that the district court should ignore. When a district court' admits an attorney pro hac vice, the attorney is expected to follow local rules. See In re United States, 791 F.3d at 957 n.8 (“A district court would clearly act within its discretion in denying pro hac vice admission if, for example, an attorney’s actions led the court to conclude the attorney would not ‘abide by the court’s rules and practices’_” (quoting Ries, 100 F.3d at 1471)). Klayman has shown an unwillingness or inability to do that. The dilemma for a district court presented with such a record is that, once an out-of-state attorney is admitted, the district court has limited tools in its arsenal for maintaining order in the courtroom. Repeated and willful violations of court rules must be dealt with by the district court alone. The district court can refer the attorney to a bar, but has no means to follow up its referral. Instead, the district court is limited to its own powers. Those powers are not insubstantial, see, e.g., 18 U.S.C. § 401; 28 U.S.C. § 1927; Chambers v. NASCO, Inc., 501 U.S. 32, 43-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (discussing the inherent powers of the courts), but the exercise of those powers can be disruptive to trial proceedings and, in an extreme case, may call into question the fairness of the trial itself.
We fully acknowledge that “attorney[s] may with impunity take full advantage of the range of conduct that our adversary system allows”—they have “a right to be persistent, vociferous, contentious, and imposing, even to the point of appearing obnoxious when acting in their client’s behalf.” In re Dellinger, 461 F.2d 389, 400 (7th Cir. 1972). However, the district courts must carefully balance that vigorous advocacy against the need for order and decorum in the proceedings. See In re McConnell, 370 U.S. 230, 236, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962). Wherever that line lies, Klayman has crossed it more than once, and the district court did not abuse its discretion—and certainly did not come close* to committing clear error—in taking account of Klayman’s past behavior and denying him pro hac vice status.
3. Attempts to Intimidate the District Court
Finally, the district court expressed concern that Klayman has shown disregard for district judges in the past by confronting them personally. The district court pointed to the Second Circuit’s finding that Klayman had challenged U.S. District Judge Denny Chin’s impartiality because he was Asian-American[8] and had been appointed by President Clinton. The court found the challenge to the judge’s racial and ethnic heritage “extremely serious.” MacDraw, 138 F.3d at 37. “Nor should one charge that a judge is not impartial,” the court emphasized, “solely because an attorney is embroiled in a controversy with the administration that appointed the judge.” Id. at 38. The Second Circuit found that these charges were “discourteous” and “degrading” to the court, “prejudicial to the administration of justice,” and “insulting and smacked of intimidation.” Id. at 37-38. The court “[did] not hesitate to hold that the suggestions regarding Judge Chin’s impartiality violated the Code of Professional Responsibility.” Id. at 38.
These lessons have not been learned. After the district court denied Klayman’s pro hac vice petition, but before Bundy asked this court for mandamus relief, Bun-dy filed a Bivens suit against Chief Judge Gloria Navarro, President Barack Obama, *1046 U.S. Senator Harry Reid, and others, in their personal capacities, alleging a conspiracy to violate his civil rights. See Bundy v. Obama, No. 2:16-cv-1047-JCM-GWF (D. Nev. dismissed with prejudice Oct. 12, 2016).[9] He dismissed the suit on October 12, 2016, only after we asked for briefing in this mandamus petition. Reasonably, the district court found-these two cases “similar[ ].” As in the case involving Judge Chin, Klayman’s participation in the suit against Chief Judge Navarro personally “smack[s] of intimidation” and retaliation.
C. The Dissent’s Reasons for Granting the Writ of Mandamus
The dissent offers two reasons for why Bundy’s request for Klayman to be admitted pro hac vice outweigh the district court’s concerns: (1) “the complexity of the proceeding against [Bundy] and his controversial political views raise concerns about his ability to retain competent counsel,” Dissenting Op. at 1053, and (2) “denying Klayman admission raises troubling concerns about the fairness of Bundy’s coming trial,” id. at 1054. We do not think that either of these reasons withstands scrutiny.
First, there is nothing in the record about Bundy’s efforts to secure competent counsel.-The dissent declares that “only a fraction of the bar nationwide—let alone in Nevada—has the experience and resources necessary to give Bundy a vigorous defense.” Id. at 1053 (emphasis added). Additionally, the dissent claims that “[o]ut of that fraction of qualified practitioners, there is likely an even smaller proportion that would actually accept Bundy’s representation. Bundy’s anti-government views and high-profile status among those who oppose federal hegemony make the prospect of representing him daunting for many seasoned defense attorneys.” Id. at 1053.[10]
Nothing in the record remotely supports these statements. For éxample, we do not have an affidavit from anyone—Bundy, Klayman, Hansen, or anyone else—telling us of unsuccessful efforts to find counsel. The dissent can only state that since the district court’s denial in March 2016, “Bun-dy seems to have failed at. finding suitable replacement trial counsel.” Id. at 1053 (emphasis added). That is not evidence. And if even there were some evidence to suggest this, the district court could not have anticipated the problem. There is no clear error in the district court’s orders.
Second, the dissent has questioned the fairness of the trial before it even begins: but for Klayman’s “capable representation, there will be serious doubts about the fairness of the proceeding.” Id. at 1054. Again, *1047 with all due respect, there is nothing in the record but the dissent’s speculation about “this risk of fundamental unfairness” in a forthcoming trial. Id. at 1054. There is no abuse of discretion or clear error in the district court’s order.
The dissent acknowledges that Klayman might have “been selective in his disclosures” to the district court and there might have been a “relevant omission” resulting in Klayman “com[ing] near the line." Id. at 1054,1055. For the reasons we have described in some detail, supra at 1043-48, Klayman, engaged in selective disclosures, made relevant omissions, and crossed the line, but if even the dissent thinks Klayman came “near the line,” that is not clear error justifying a writ of mandamus.
Finally, the dissent dismisses the rulings by Judges Keller and Chin because they were “issued 22 and 18 years ago” and may be “poor predictors of Klayman’s likely behavior today,” Dissenting Op. at 1055. If Klayman had acted responsibly in the time since then, we might be inclined to agree with the dissent that conduct twenty-years in the past is outdated. But, as the district ‘ court properly advised us in her filing, Klayman has not changed. Judges have sanctioned, chastised, and rebuked Klayman repeatedly over the past-twenty years: in 1997, 1999, 2001, 2003, 2009, 2011, and twice in 2015. As the Middle District of Florida observed last year: “[T]his approach to litigation is the norm and not the exception for [Klayman].” City-Pages, 2015 WL 1546173, at *8 n.7. The Eleventh Circuit affirmed that judgment in 2016. 650 Fed.Appx. 744.
IV. CONCLUSION
Klayman has made misrepresentations and omissions to the district court regarding the ethics proceedings before the District of Columbia Bar; he has shown a pattern of disregard for local rules, ethics, and decorum; and he has demonstrated a lack of respect for the judicial process by suing the district judge personally. By -any standard, the district court properly denied his petition to be admitted pro hac vice. Bundy is entitled to a fair trial, defended by competent, vigorous counsel of his choosing. But his right to such counsel does not extend to counsel from outside the district who has made it a pattern or practice of impeding the ethical and orderly administration of justice.
The writ of mandamus is DENIED.

. The incident has its own Wikipedia page. Bundy Standoff, Wikipedia (Oct. 27, 2016, ■ 1:54 PM), . https://en.wikipedia.org/wiki/ Bundy_standoff.

. Due to health concerns, Hansen requested permission to withdraw from the case. The district court approved his request upon the condition that Bundy find substitute local counsel. On October 24, 2016, Nevada attorney Bret Whipple entered his appearance on behalf of Bundy.

. Klayman was the CEO and General Counsel of Judicial Watch. Klayman founded Judicial Watch in 1994 and left in 2003. According to its current website, Judicial Watch is a "conservative, non-partisan educational foundation[ ] [that] promotes transparency, accountability and integrity in government, politics and the law.” About Judicial Watch, Judicial Watch, http://www.judicialwatch.org/about (last visited Oct. 25, 2016).

. The district court noted that, contrary to its order, Klayman did not file a new Verified Petition. Thus, it construed Klayman’s Renewed Petition as a request for reconsideration of the original Verified Petition.

. Even though Bauman was decided before the Supreme Court's most recent discussion of mandamus in Cheney, 542 U.S. 367, 124 S.Ct. 2576, 159 L.Ed.2d 459, we continue to apply the Bauman factors without separately considering, the. three conditions described above in Cheney. In re United States, 791 F.3d 945, 955 n.7 (9th Cir. 2015).

. "Clearly erroneous as a matter of law” is a standard that is not familiar to us in any other context. "Clearly erroneous” is the standard we associate with reviewing findings of fact. See Fed. R. Civ, P. 52(a)(6) (.“Findings of fact ... must not be set aside unless clearly erroneous-”). We assume that by “clear error” in law, we mean something like "plain error,” the standard we use to identify when a district court has committed an obvious error of law, but one that was not preserved for appeal by a timely objection. See Fed. R. Crim. P. 52(b); Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009).

. Klayman did submit his March 2016 brief to the district court, and some of these facts may be gleaned from his brief. But to date, we have not seen any recommendation or briefing papers filed by the Hearing Committee *1043 following the three days of hearings in January 2016. Submitting the papers from one side in a contested matter is not full disclosure.

. The Second Circuit noted that in proceedings in the Central District of California, "[djisturbingly, Klayman ... accused the district judge of being anti-Asian.” MacDraw, 138 F.3d at 38 n.3 (citing Baldwin Hardware, 78 F.3d at 555, 562).

. The suit was filed by attorney Hansen. It does not list Klayman as counsel. In response to questions at oral argument about the suit, Klayman displayed knowledge of the content of the lawsuit and at first admitted to being a plaintiff before clarifying that he wasn't. It is apparent that Klayman played some role in the preparation and filing of that suit.

. The dissent also focuses on the fact that the trial is scheduled for February, "a little over three months from now.” Dissenting Op. at 1051. That is not the district court's fault. Klayman filed his pro hac vice application in March; the district court denied it without prejudice nine days later. He filed a renewed application in April; the district court denied - it without prejudice twelve days later. Bundy then waited three months before filing his petition for a writ of mandamus. Our Clerk's Office, after discussions with Bundy’s counsel, held the petition until September and presented it to us in October. The six-month delay in seeking extraordinary relief from the district court’s March and April Orders must be laid at the feet of Bundy and this court, not the district court.
If Bundy thinks he cannot be prepared for his February 2017 trial, he may ask the court to delay the trial. See 18 U.S.C. § 316 l(h)(8)(B)(iv).