
FILED

Jun 14 2023, 10:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan D. Harwell
Harwell Legal Counsel LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Hayden J. Nix,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 14, 2023

Court of Appeals Case No.
22A-PC-1496

Appeal from the Hancock Superior
Court

The Honorable Cody B. Coombs,
Special Judge

Trial Court Cause No.
30D01-2003-PC-509

**Opinion by Judge Robb**
Judges Crone and Kenworthy concur.

**Robb, Judge.**

# Case Summary and Issues

[1] In 2019, Hayden Nix pleaded guilty to three counts of sexual misconduct with a minor, all Level 5 felonies, and was sentenced to twelve years in the Indiana Department of Correction. In 2020, Nix petitioned for post-conviction relief. Relevant to the issues raised in this appeal, Nix alleged he was denied the effective assistance of counsel and he did not knowingly, voluntarily, and intelligently enter a plea of guilty. In 2022, following an evidentiary hearing, the post-conviction court denied Nix's petition.

[2] Nix appeals the denial of post-conviction relief, raising two issues for our review: 1) whether the post-conviction court erred when it found he entered his guilty plea knowingly, intelligently, and voluntarily; and 2) whether the post-conviction court erred when it found he was not denied the effective assistance of counsel. Concluding the post-conviction court did not clearly err in denying Nix's requested relief, we affirm.

## Facts and Procedural History

### I. Trial Court Proceedings

[3] In late 2017, the State charged Nix with three counts of sexual misconduct with a minor, all Level 5 felonies, and two counts of rape, both Level 3 felonies. Nix was arrested on December 26 and remained in jail throughout the proceeding. In early 2018, attorney Zaki Ali entered an appearance as Nix's counsel. Several jury trial settings were continued at Nix's request. A January 7, 2019,

setting was continued at the State's request and the trial was rescheduled for January 28, 2019.

[4] On January 22, 2019, Ali filed an emergency motion for continuance, stating he had recently been ordered by his physician "to be off work until further notice." Exhibit Volume, Volume III at 36. The trial court granted the continuance, rescheduling the jury trial for March 11, 2019. But "due to defense counsel's inability to represent this client," the trial court ordered Ali to withdraw his appearance and allow Nix to seek new counsel. *Id.* at 23. On February 4, the trial court, on its own motion, found that "defense counsel has the physical inability to represent the client in this cause[,]" noted it had ordered Ali to withdraw but Ali had not done so, and ordered the county clerk to remove Ali as counsel of record. *Id.* at 37. The court appointed Jon Keyes to represent Nix. Keyes entered his appearance but moved to withdraw several days later because Nix hired Bryan Williams as private counsel. The trial court allowed Keyes to withdraw only after Williams affirmed he was prepared to try the case on March 11, 2019.

[5] Before the trial date, Nix, represented by Williams, and the State entered into a plea agreement. Nix agreed to plead guilty to three counts of sexual misconduct with a minor, the State agreed to dismiss the two counts of rape, and the sentence was left to the trial court's discretion. By initialing the individual provisions of the plea agreement, Nix acknowledged his counsel had advised him of the minimum and maximum penalties, which were set forth in

the agreement, and that consecutive sentences were possible; that he had certain constitutional rights that he would be waiving by pleading guilty; that he was entering the plea knowingly, intelligently, and voluntarily; and that he was satisfied with his counsel's representation. *See id.* at 6-8.

[6] Nix appeared in court on March 8 for a change of plea hearing. The trial court questioned Nix about whether he had reviewed the agreement with his counsel, understood it, and had signed the plea agreement and initialed all of its terms; Nix affirmed that he had. The court advised Nix of the minimum and maximum sentence he could receive for each count and explained the sentences could be consecutive or concurrent. The court inquired if Nix understood what an open plea was, and Nix replied, "[It's] up to you to decide what my sentence will be." *Id.* at 113. Nix said no one had made any promises to him other than what was in the plea agreement and stated he was satisfied with the services of his attorney. When asked, Nix affirmed he understood the rights he would be waiving by pleading guilty and he was pleading guilty as his "own free and voluntary act." *Id.* at 116. The State presented a factual basis with which Nix agreed. Accordingly,

> [The] Court finds the Defendant . . . understands the nature of the charges against him, possible penalties and his constitutional rights, has knowingly, intentionally, and voluntarily pursuant to the Plea Agreement entered a plea of guilty. There's a factual basis for said plead [sic] to which the Defendant acknowledges, and the Defendant is represented by competent counsel.

*Id.* at 119-20.  Following a sentencing hearing, the trial court found Nix guilty of three counts of sexual misconduct and ordered him to serve an aggregate sentence of twelve years with two years suspended to probation.

## II.  Post-Conviction Proceedings

In March 2020, Nix petitioned for post-conviction relief.  Nix amended his petition in February 2021.  The relevant allegations of his petition are:

- His guilty plea was not made knowingly, intelligently, and voluntarily because he was advised by Williams that "he would get probation or, at worst, home detention, and would be able to go home if he signed the plea agreement."
- He was denied his right to representation by counsel of his choice.
- He was denied effective assistance of counsel when:
    - Ali did not oppose the court's order that he withdraw, the court's *sua sponte* order withdrawing his appearance, or the court's order appointing Keyes and did not otherwise preserve the issue for appeal;
    - Keyes did not move for the court to reconsider its order removing Ali or otherwise preserve the issue for appeal; and
    - Williams did not move for the court to reconsider its order removing Ali or otherwise preserve the issue for appeal and failed to move for a continuance of the March 11 trial setting,

representing to the court that he was prepared to go to trial on that date.

Corrected Appellant's Appendix, Volume 2 at 24-26.[1] An evidentiary hearing was held in 2021. Nix called each of his previous attorneys to testify and also testified himself. The State presented the testimony of Judge Terry Snow, who had presided over Nix's case.

[8] Ali had represented Nix in a previous case. Nix liked Ali and wanted him for this case as well. Ali entered his appearance in February 2018 and began preparing for trial after discussing the case with Nix, who asserted his innocence. Ali believed the State would be unable to prove the rape charges and told Nix he thought Nix would "at most . . . probably be found guilty on a lesser charge." Transcript, Volume II at 42. Ali was prepared for the trial on January 7, 2019, but it was continued at the State's request to January 28. Sometime in January, Ali saw a doctor due to pain he was experiencing in his neck and chest. The doctor told him he had a heart issue and was "off work" while he underwent testing "to make sure that it wasn't fatal." *Id.* at 47. At the time Ali moved for a continuance of Nix's January 28 trial, he did not know how long he would be off work. Judge Snow, who presided over Nix's case,

---

[1] Nix's petition alleges several other grounds for vacating or setting aside his conviction. To the extent any of those allegations are not discussed herein, we have found them waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a).

knew Nix was incarcerated awaiting trial and considered the case a priority. Ali's motion said he was unable to work until further notice—"[w]hich is who knows when"—and Judge Snow was not willing to let the fourteen-month-old-case linger indefinitely. *Id.* at 227. As it turned out, Ali was off work for around forty-five days and was "probably" back to work "around" March 11. *Id.* at 52.

[9] After being removed from the case, Ali filed nothing advising the court he was back to work and prepared for trial or asking to re-appear as Nix's counsel. If Ali's health had allowed him to participate in the trial as scheduled and asked the court to let him re-enter his appearance, Judge Snow would have allowed that; the judge's interest was in protecting Nix's "right to go to trial in a timely manner." *Id.* at 233. Nix was "[c]onfused and upset" when Ali was removed from his case. *Id.* at 164. Based on the trial court's actions and statements, though, Nix did not think he could hire Ali back even after he returned to work. *Id.* at 166-67. When asked if he should have made a record, Ali said:

> In hindsight yes[,] at the current time no[.] I don't even think to this day . . . that I withdrew from Hayden's case as his attorney[.] [T]o answer your question[,] should I[? Y]es I think I should of [sic] to preserve the record[,] to make it abundantly clear [be]cause the case law is extensive about . . . counsel being of the client's the client's choosing and – and I could of [sic] filed a motion . . . stating that extensively to the Judge.

*Id.* at 52.

[10] Keyes was appointed by the trial court to represent Nix after Ali was withdrawn from the case. Keyes filed an appearance, but he was contacted shortly afterward by a member of Nix's family saying that private counsel had been hired. Although counsel being withdrawn by the court struck him as "unusual," Keyes took no action regarding Nix's right to the counsel of his choice: "I suppose I probably should have. . . . I like to think if I would have been his attorney longer I would have at least inquired into that . . . but I think once I found out he was going to hire private counsel I didn't do a lot more on the case." *Id.* at 20, 23-24.

[11] When Williams was hired, he knew a jury trial was set in approximately one month and did not think he would be granted a continuance, but he believed he could be ready. He visited Nix in jail at least twice. Williams did not recall whether Nix expressed that he was unhappy about Ali being removed from the case, but Williams did not ask the court to reconsider its order removing Ali. Nix told Williams no one had talked to him about a plea offer, so Nix was planning to go to trial "because he didn't know an offer was a possibility." *Id.* at 102. Williams received discovery within a couple of days of entering his appearance and focused his preparation on "statements from witnesses[.]" *Id.* He also interviewed the complaining witness. After that interview, Williams visited Nix and spoke with him about the possibility of pleading guilty to the lesser charges in exchange for the rape charges being dismissed. Although Williams believed there were weaknesses in the State's case with respect to the

rape charges, he also believed a jury would find the complaining witness credible and thought the plea was beneficial to Nix because "a jury trial is always a gamble[.]" *Id.* at 124. Williams could not remember the exact timing, but Nix said Williams broached this possibility on the Wednesday before the trial date. Williams said Nix told him at that time "he would absolutely [plead guilty] if the State would offer [to dismiss the rape charges.]" *Id.* at 112; *see also* Ex., Vol. III at 13 (Williams' contemporaneous note to Nix's file that after interviewing victim and speaking with Nix, "Hayden told me that if he could plead guilty to Misconduct with a Minor and the Rape be dismissed that he would do that").

[12] The State did make the offer. Williams explained the plea agreement to Nix, including the full range of sentencing possibilities. *See id.* ("I had explained to Hayden that he would be facing 12 years in prison, but we would be arguing for Community Corrections and Probation."). Nix said Williams told him it was an open plea, that the court could sentence him to "the full time" and "run it consecutive," but advised Nix he would likely get six to nine months of probation followed by six to nine months of house arrest. Tr., Vol. II at 176; *see also id.* at 86 (Nix's grandmother testifying Nix called her after he pleaded guilty and told her Williams said he would "only get 6-9 months probation and [he] could come home"). Nix felt like he could reject the plea agreement and still go to trial as scheduled on Monday but also felt Williams "wasn't . . . prepared all the way to go to trial." *Id.* at 178. Nix signed the plea agreement and changed

his plea in court on Friday before the jury trial was scheduled to begin on Monday. Nix knew the rights he was giving up and felt well-informed when he made the decision to plead. Ali was "shocked" to learn Nix entered a guilty plea and did not think it was a particularly beneficial plea agreement. *Id.* at 54. Ali told Nix after the fact Nix had done the wrong thing in pleading guilty.

[13] In June 2022, the post-conviction court issued an order denying Nix's requested relief. Nix now appeals.

# Discussion and Decision

## I. Post-Conviction Standard of Review

[14] Post-conviction proceedings are civil proceedings in which a person may present limited challenges to a criminal conviction or a sentence. *See* Ind. Post-Conviction Rule 1; *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019), *cert. denied*, 141 S. Ct. 553 (2020). "The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence." P-C.R. 1(5). A petitioner who has been denied post-conviction relief appeals from a negative judgment and faces a "rigorous standard of review." *Wesley v. State*, 788 N.E.2d 1247, 1250 (Ind. 2003). To prevail on appeal, "the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court." *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006). We will reverse a post-conviction court's findings and judgment "only upon a showing of clear error – that which leaves us with a

definite and firm conviction that a mistake has been made." *Humphry v. State*, 73 N.E.3d 677, 682 (Ind. 2017) (citation omitted).

## II. Voluntary Guilty Plea

Nix contends the post-conviction court committed clear error when it found his guilty plea was voluntary, knowing, and intelligent. Nix argues he did not "knowingly, voluntarily, and intelligently enter his plea of guilty when he did not understand the penal consequences of his plea[.]" Appellant's Brief at 17.

"A valid guilty plea is a confession of guilt made directly to a judicial officer and necessarily admits the incriminating facts alleged." *Carter v. State*, 739 N.E.2d 126, 128 (Ind. 2000). To be valid, a guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Gibson*, 133 N.E.3d at 697 (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "A guilty plea constitutes a waiver of constitutional rights," and therefore, the trial court must "evaluate the validity of every plea before accepting it." *Davis v. State*, 675 N.E.2d 1097, 1102 (Ind. 1996). To that purpose, Indiana Code section 35-35-1-2 provides, in part, that the trial court shall not accept a guilty plea unless it determines the defendant: (1) understands the nature of the charges; (2) has been informed that a guilty plea effectively waives several constitutional rights, including trial by jury, confrontation and cross-examination of witnesses, the right to subpoena witnesses, and proof of guilt beyond a reasonable doubt without self-incrimination; and (3) has been

informed "of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences[.]" *See Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010).[2]

[17] In assessing the voluntariness of the plea, we review all the evidence before the post-conviction court, "including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record." *State v. Moore*, 678 N.E.2d 1258, 1266 (Ind. 1997), *cert. denied*, 523 U.S. 1079 (1998). In general, if a trial court undertakes the steps set forth in Indiana Code section 35-35-1-2 to ensure that a plea is voluntary, "a post-conviction petitioner will have a difficult time overturning his guilty plea on collateral attack." *Richardson v. State*, 800 N.E.2d 639, 643 (Ind. Ct. App. 2003), *trans. denied*.

[18] We conclude based on our review of the transcripts from Nix's guilty plea and sentencing hearings, the plea agreement itself, and the testimony from the post-conviction hearing that Nix's plea was entered voluntarily, knowingly, and intelligently. The colloquy between the trial court and Nix at the guilty plea hearing was extensive. The trial court explained to Nix more than once the

---

[2] In *Boykin v. Alabama*, the United States Supreme Court stated a trial court accepting a guilty plea must be satisfied and the record must show the accused was informed of, and waived, three specific federal constitutional rights: the right against self-incrimination, right to a trial by jury, and right to confront his accusers. 395 U.S. 238, 242-43 (1969). Indiana Code section 35-35-1-2 includes those rights.

minimum and maximum sentence for the Level 5 felonies to which he was pleading. *See* Ex., Vol. III at 112, 113. The court solicited Nix's own understanding of an "open plea." *Id.* at 113. The court advised Nix the sentences could be consecutive or concurrent to each other and explained what that means. *See id.* (stating, as an example, if "you had three (3) five (5) year sentences and they are consecutive, it's really a fifteen (15) year sentence"). Nix affirmed each time that he understood and had no questions.[3] In addition, the plea agreement set forth the minimum and maximum sentences for his charges, advised that consecutive sentences were possible, and stated, "The Terms of the sentence shall be open and the Court shall determine the appropriate sentence afte[r] the argument of counsel[.]" *Id.* at 5. And Nix testified at the post-conviction hearing that Williams told him the court could sentence him to "the full time" and "run it consecutive." Tr., Vol. II at 176.

[19] "A plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for in [Indiana Code section 35-35-1-2] is unlikely to be found wanting in a collateral attack." *White v. State*, 497 N.E.2d 893, 905 (Ind. 1986). Such is the case here: the trial court thoroughly advised Nix of his constitutional rights, the consequences of his guilty plea, and the sentencing possibilities and determined on the record that

---

[3] The trial court addressed with Nix all of the other items in Indiana Code section 35-35-1-2, and Nix does not argue otherwise.

Nix's plea was made knowingly, intentionally, and voluntarily. Accordingly, the post-conviction court did not clearly err in declining to set aside Nix's guilty plea as involuntary.

[20] To the extent Nix argues his guilty plea was involuntary because Williams erroneously advised him he would receive a shorter, probationary sentence, we note the voluntariness of a plea is distinct from a claim of ineffective assistance of counsel: review of the voluntariness of a plea "focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice." *Moore*, 678 N.E.2d at 1266; *see Hill*, 474 U.S. at 56-57 (analyzing a defendant's claim that his plea was "involuntary" because his counsel gave him wrong information about his parole date as an ineffective assistance claim). Therefore, we will address Williams' advice below.

## III. Ineffective Assistance of Counsel

### A. Standard of Review

[21] When reviewing claims of ineffective assistance of counsel, we apply the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019). To prevail on such a claim, the petitioner must demonstrate both that counsel's performance was deficient and the deficient performance prejudiced the petitioner. *Barber v. State*, 141 N.E.3d 35, 42 (Ind. Ct. App. 2020), *trans. denied*. Deficient performance

exists if counsel's performance falls below an objective standard of reasonableness based on prevailing professional norms. *Id*. Prejudice exists if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Failure to prove either prong causes the petitioner's claim to fail. *Id*.

[22] Ultimately, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Jervis v. State*, 28 N.E.3d 361, 365 (Ind. Ct. App. 2015), *trans. denied*.

## B. Failure to Preserve Nix's Right to Counsel of Choice

[23] The Sixth Amendment guarantees a criminal defendant the right to assistance of counsel. "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Erroneous deprivation of the right to counsel of choice "unquestionably qualifies as structural error," *id.* at 150, "a limited class of fundamental constitutional errors that defy analysis by harmless error standards[,]" *Neder v. United States*, 527 U.S. 1, 7 (1999) (quotation omitted). "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017).

Structural errors are therefore those that "affec[t] the framework within which the trial proceeds" rather than being "simply . . . error[s] in the trial process itself." *Gonzalez-Lopez*, 548 U.S. at 148 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)); *see also McCoy v. Louisiana*, 138 S.Ct. 1500, 1504, 1511 (2018) ("An error is structural if it is not designed to protect defendants from erroneous conviction, but instead protects some other interest" or "when its effects are too hard to measure, as is true of the right to counsel of choice[.]").

[24] Nix contends all three of his trial counsel were ineffective for failing to object to the structural error committed by the trial court when it ordered his counsel of choice to be withdrawn from the case. Structural error "carries with it no talismanic significance"; it means "only that the government is not entitled to deprive the defendant of a new trial by showing that the error was 'harmless beyond a reasonable doubt.'" *Weaver*, 582 U.S. at 299 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Structural errors "trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole" regardless of the error's actual effect on the outcome, *United States v. Davila*, 569 U.S. 597, 611 (2013), but that rule is applied to a preserved objection on direct review, *Gonzalez-Lopez*, 548 U.S. at 142-44. The Supreme Court recently addressed the question of "what showing is necessary when the defendant does not preserve a structural error . . . but raises it later in the context of an ineffective-assistance-of-counsel claim." *Weaver*, 582 U.S. at 299. The right at issue in *Weaver* was the right to a public trial, which was violated when the

court excluded everyone but prospective jurors from the courtroom during voir dire without objection by counsel.

[25] Although specific to the structural error at issue there, a plurality of the Court held in *Weaver* that "when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically." *Id*. at 300-01.

> In the criminal justice system, the constant, indeed unending, duty of the judiciary is to seek and to find the proper balance between the necessity for fair and just trials and the importance of finality of judgments. When a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right. When a structural error is raised in the context of an ineffective-assistance claim, however, finality concerns are far more pronounced. For this reason, and in light of the other circumstances present in this case, petitioner must show prejudice in order to obtain a new trial.

*Id.* at 305; *see also id.* at 303 (noting the differences between structural error claims raised at trial or on direct appeal and those raised on collateral review "justify a different standard for evaluating a structural error").

[26] The right to select and be represented "by one's preferred attorney is comprehended by the Sixth Amendment, [but] the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the

lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Thus, the Supreme Court has recognized a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (internal citations omitted); *see United States v. Sellers*, 645 F.3d 830, 835-36 (7th Cir. 2011) (noting even where Sixth Amendment rights are at issue, a court "legitimately can balance the right to counsel of choice against the demands of its calendar and make scheduling and other decisions that effectively exclude chosen counsel"); *United States v. Ensign*, 491 F.3d 1109, 1114 (9th Cir. 2007) (noting that court's previous recognition that "the Sixth Amendment right to chosen counsel is not absolute and could be revoked to serve a compelling purpose, such as the efficient and orderly administration of justice") (internal quotations omitted). In *Weaver*, the Court stated the "fact that the public-trial right is subject to exceptions suggests that not every public-trial violation results in fundamental unfairness." 582 U.S. at 298. The same would seem to be true here, as well.

[27] Requiring counsel to object to a trial court ruling contemporaneously "gives the court an opportunity to cure the alleged error, which, in turn, 'can result in enormous savings in time, effort and expense to the parties and the court, including avoiding an appeal and retrial.'" *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018) (quoting *State v. Daniels*, 680 N.E.2d 829, 835 (Ind. 1997)). If the trial court overrules the objection, the appellate court benefits from a sufficiently developed record on which to base its decision. *Id.* Had counsel

raised the alleged error to the trial court, as we will assume they should have,[4] the trial court could have—and based on the judge's testimony at the post-conviction hearing *would* have— explained on the record that its ruling to withdraw Ali as counsel of record was based on balancing Nix's right to counsel of choice against his "right to go to trial in a timely manner." Tr., Vol. II at 233; *see Weaver*, 582 U.S. at 298, 302 (stating a judge "may deprive a defendant of his right to an open courtroom by making proper factual findings . . . before making an otherwise valid decision to order the courtroom temporarily closed" and noting when a defendant first raises the error as ineffective assistance of counsel, "the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure"). Only the *erroneous* deprivation of the right to counsel of choice is structural error and given the trial court's latitude to control its docket and the interests the judge identified as reasons for his ruling, Nix has not shown a reasonable probability of a different outcome had any of his attorneys objected to the trial court's procedure.[5]

---

[4] Ali and Keyes both conceded at the post-conviction hearing they should have objected to the trial court and preserved the alleged error. *See* Tr., Vol. II at 24, 52. Williams was not specifically asked if he thought he should have objected but when asked if it appeared to him that Nix's right to counsel of choice was violated, he responded, "I wouldn't say that." *Id.* at 101.

[5] Nix repeatedly references the fact Ali was incapacitated for only forty-five days. Although that fact is known *now*, it was not at the time these decisions were made. Ali informed the court he was "off work until further notice," Ex. Vol., Vol. III at 36, and did not notify Nix or the court when he was able to return to work.

[28] We also note Nix's claim of error is not only raised on collateral review but also following a guilty plea. "[T]he consequence of a structural error is that it is not subject to harmless-error review, but such errors can still be waived." *Jackson v. Bartow*, 930 F.3d 930, 934 (7th Cir. 2019) (internal citation and quotation marks omitted). A voluntary, subsequent guilty plea generally operates as a waiver of claims of constitutional error that occurred before the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). And a "defendant's voluntary guilty plea may waive a claim even of structural error." *United States v. Williams*, 29 F.4th 1306, 1314 (11th Cir. 2022). In *Class v. United States*, the Supreme Court contrasted a defendant's post-guilty plea challenge to the constitutionality of the statute under which he was convicted with a claim raising a "case-related constitutional defect[]" occurring before entry of the guilty plea. 138 S. Ct. 798, 804-05 (2018). The Court explained that the latter could be waived by the defendant's guilty plea because the error could have been cured but for the defendant's subsequent admission to the charges against him. *Id.* at 805 (stating the unlawful exclusion of grand jurors of the defendant's race—previously identified as structural error—could be cured by a new indictment by a properly selected grand jury and therefore could be waived); *see also Williams*, 29 F.4th at 1314 (holding defendant's claim of structural error in the improper denial of his right to self-representation was waived by his voluntary guilty plea).

[29] Here, prior to Nix's guilty plea, any error in denying him his counsel of choice could have been cured by the trial court either explaining its decision on the

record or granting a continuance until Ali could continue his representation of Nix. Because the structural error could have been cured, it was waived when Nix pleaded guilty.[6]

## C. Failure to Advise of Penal Consequences

[30] As noted above, *supra* ¶ 20, Nix contends Williams provided ineffective assistance by failing to properly advise Nix of the penal consequences of his plea. We conclude Nix has not shown deficient performance and therefore his claim fails.

[31] At his guilty plea hearing, Nix told the trial court he understood the range of penalties for the crimes to which he was pleading guilty, he had not been promised anything but what was stated in the plea agreement, and he understood an "open plea" meant his sentence was up to the court. He also said he was satisfied with Williams' representation. At the post-conviction hearing, Nix testified that when Williams brought the plea agreement to him, Williams told him he would likely get six to nine months of probation followed by six to nine months of house arrest. Tr., Vol. II at 176; *see also id.* at 174 (Nix testifying Williams advised him "there was a possibility [the court] could give you more than that but [Williams] said he would drop out of his chair dead if

---

[6] Although choice of counsel issues may affect a defendant's decision to plead guilty, *see Gonzalez-Lopez*, 548 U.S. at 150, we have already determined Nix's guilty plea was voluntary, knowing, and intelligent.

that happened"). Williams denied he made any promises about the sentence, and Nix acknowledged Williams told him it was an open plea, so the court could sentence him to "the full time" and "run it consecutive." *Id*. at 176.

[32] When we review a post-conviction decision, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Reeves v. State*, 174 N.E.3d 1134, 1140 (Ind. Ct. App. 2021), *trans. denied*. Here, the evidence supporting the post-conviction court's decision shows Williams explained the plea agreement and properly advised Nix of the penal consequences of his plea. *See supra*, ¶ 12. Nix testified in his own words at the guilty plea hearing that the open plea he was agreeing to meant the trial court would decide his sentence, implicitly acknowledging he understood the sentence could be anything within the statutory range. And he acknowledged at the post-conviction hearing that Williams told him he could get a maximum, consecutive sentence. At most, Williams offered an opinion about what the trial court might do. That opinion may have given Nix hope that he would receive a light sentence, but Williams did not give Nix erroneous legal advice.[7]

---

[7] Because Nix must prove both deficient performance and prejudice, we need not address the prejudice prong having concluded he failed to prove deficient performance.

[33] For the foregoing reasons, we conclude the post-conviction court did not clearly err in denying post-conviction relief on Nix's claim of ineffective assistance of counsel.

## Conclusion

[34] We conclude Nix has not shown the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court on his post-conviction claims. We therefore affirm the post-conviction court's denial of Nix's petition for post-conviction relief.

[35] Affirmed.

Crone, J., and Kenworthy, J., concur.